UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
WILLY MALONE, JEROME WATSON, ROBERT ABREU,
DESIREE WILSON, EVA LEE, OLIVIA WILSON,
SHERRE WILSON, ANGEL HERNANDEZ, NYTRICHA
SMITH and DANIEL PAULINO,

                                **Plaintiffs,**          **Case Number:**
                                                **07-CV-9583**
                                                  **(LTS) (GWG)**

        -against-

NEW YORK PRESSMEN'S UNION NUMBER 2
and NEWS CORP a.k.a. NYP HOLDINGS d/b/a
THE NEW YORK POST,

                                **Defendants.**

------------------------------------------------------------------------

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNION'S MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION TO AMEND THE COMPLAINT

Jennifer L. DeVenuti, Esq. (JD-5778)
Neil M. Frank, Esq. (NF-0251)
**FRANK & ASSOCIATES, P.C.**
*Attorneys for Plaintiffs*
500 Bi-County Blvd., Suite 112N
Farmingdale, New York 11735
Phone:    (631)756-0400
Facsimile: (631) 756-0547

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................i, ii, iii

I. PRELIMINARY STATEMENT ......................................................... 1

II. FACTUAL BACKGROUND ............................................................ 1

III. ARGUMENT ............................................................................... 4

   STANDARD OF REVIEW .......................................................... 4

IV. THE INSTANT ACTION IS NEITHER A CLASS ACTION UNDER
  RULE 23 NOR A COLLECTIVE ACTION UNDER THE FAIR LABOR
  STANDARDS ACT 10 ................................................................ 6

V. A PATTERN AND PRACTICE COMPLAINT CAN ASSERT CLAIMS
  OCCURRING OUTSIDE OF THE 300-DAY EEOC FILING PERIOD
  BASED UPON THE CONTINUING VIOLATIONS DOCTRINE ............ 8

VI. PLAINTIFFS STATE A CLAIM FOR RELIEF BASED
  UPON THE ALLEGATIONS IN THE COMPLAINT ....................... 11

VII. PLAINTIFFS' ALLEGATIONS STATE A CLAIM UNDER NEW
  YORK STATE HUMAN RIGHTS LAW.................................... 13

VIII. PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE AND
  SERVE AN AMENDED COMPLAINT.....................................13

CONCLUSION .................................................................................18

<u>TABLE OF AUTHORITIES</u>

Cases

*Abrams v. Baylor Coll. of Med.*, 805 F.2d 252 (5th Cir. 1986)........................................10

*Acoustica Associates, Inc. v. Powertron Ultrasonics Corp.*, 28 F.R.D. 16
(E.D.N.Y. 1961)..................................................................................6

*Adames v. Mitsubishi Bank, LTD.*, 751 F.Supp. 1565 (E.D.N.Y. 1990)..................10

*Barbara Kraus v. Robert Brandsetter*, 185 A.D.2d 302 (2d Dep't 1992)..............17

*Branch v. Guilderland Cent. School District*, 239 F.Supp. 2d 242 (N.D.N.Y. 2003)...11

*Chambers v Time Warner Inc.*, 282 F.3d 147 (2d. Cir. 2002)...............................5

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957)..........................................4

*Cortec Indus, Inc. v. Sum Holding L.P.* 949 F.2d 42 (2d Cir. 1991)........................5

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000).....................................15

*Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1982), order modified,
742 F.2d 520 (9th Cir. 1984).....................................................................9

*E.E.O.C. v. Kovacevich*, 2007 WL 1174444 (E.D. Cal. 2007).............................9

*Employees Committed for Justice v. Eastman Kodak Company*, 407 F.Supp. 2d 423
(W.D.N.Y. 2005).....................................................................................10

*Fair Housing Development Fund Corp. v. Burke*, 55 F.R.D. 414 (E.D.N.Y. 1972)...7

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962).........................................14

*Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636 (2d Cir. 2000).........................16

*Goldman v Belden*, 754 F.2d 1059 (2d Cir. 1985)...........................................4

*Granser v. Box Tree South, Ltd.*, 164 Misc. 2d 191, 623 N.Y.S.2d 977 (Sup. Ct. N.Y.
Cty. 1994)............................................................................................17

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001)..................................................15

*Hall v. E.I. DuPont De Nemours & Co.*, 345 F.Supp. 353 (E.D.N.Y. 1972)............7

*Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y. 1976)..............7

*Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir. 1994) .......................................5

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69 (2d Cir. 1995).........5

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843,

52 L.Ed.2d 396 (1977)...................................................................10

*Ledbetter v. Goodyear*, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007)...........................8

*McClary v. Marine Midland Bank*, 87 A.D.2d 982, 450 N.Y.S.2d 109

(4th Dep't 1982)............................................................................11

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.

2d 106 (2002)...............................................................................10

*Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5 (1st Cir. 1998).........9

*Ricciuti v. New York City Transit Authority*, 941 F.2d 119 (2d. Cir. 1991)...............6

*Richardson v. New York State Department of Correctional Services*, 180 F.3d 426

(2d Cir. 1999)...............................................................................16

*Roeder v. General Signal Corp*, 901 F. Supp. 124 (W.D.N.Y., 1995).....................6

*Russell v. Northrop Grumman Corporation*, 921 F. Supp. 143 (E.D.N.Y.1996...........5

*Ryder Energy Distribution Corp. v Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2d

Cir. 1984)..................................................................................5

*Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749 (2d Cir. 2004)...................15

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)..................6

*Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87

(2d Cir. 2001)……………………………………………...…………..15

*Sunshine v. Long Island University*, 862 F.Supp. 26 (E.D.N.Y. 1994)………………..11

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506,, 122 S.Ct. 992 (2002)…………………….5

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003)………………………………………16

*Vulcan Society of Westchester County, et al. v. Fire Department of the City of White*

*Plains, et al.*, 82 F.R.D. 379 (S.D.N.Y. 1979)…………………………………………7

*Walter v. Westdeutsche Rundfunk, Ard.*, Not Reported in F.Supp 2d,

2004 WL 1052776, (S.D.N.Y. 2004)...............................................................................4

*Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376 (2d Cir. 2001)………….16

Statutes:

Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000(e)……………………..15

New York Executive Law §§292, *et seq.* … … … … … … … … … … … … … … … … … …15

Federal Rule of Civil Procedure 12………………………………………………………4

Federal Rule of Civil Procedure 15………………………………………………………14

Federal Rule of Civil Procedure 20………………………….…………………………….6

## I. **PRELIMINARY STATEMENT**

Plaintiffs, by and through their attorneys, FRANK & ASSOCIATES, P.C., submit this Memorandum of Law in Opposition to the Union's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The following is based on the files maintained in our office, relevant case law, information obtained from Plaintiffs, and the Declaration of Jennifer L. DeVenuti, Esq. in support of Plaintiffs' Opposition to Defendant Union's Motion to Dismiss.

Plaintiffs also cross-move herein to amend the complaint in this action, and a Proposed First Amended Complaint is attached to the Declaration of Jennifer L. DeVenuti, Esq. in Support of Plaintiffs' Motion for Leave to File an Amended Complaint as Exhibit "B."

## II. **FACTUAL BACKGROUND**

Plaintiffs are a group of minority individuals who work or have worked in the newspaper industry, specifically for Defendant, The New York Post (hereinafter "Defendant Post"). All Plaintiffs, except for Plaintiff Eva Lee (hereinafter "Lee") and Plaintiff Jerome Watson (hereinafter "Watson") are current members of New York Pressmen's Union Number 2 (hereinafter "Defendant Union") (Complaint ¶9, 10). The following factual statements are made upon information and belief based upon the factual information contained in Plaintiffs' Complaint. Parenthetical references are to Plaintiffs' Complaint filed on or about October 26, 2007.

The facts in this case are complex and unique to the newspaper industry. As such, discovery is needed to properly ascertain the specific factual information to support the allegations in the Complaint.

1

Defendant Union is the collective bargaining representative for individuals who work in the pressroom at Defendant Post (Complaint at ¶ 16) and has a Collective Bargaining Agreement (hereinafter "CBA") with Defendant NYP (¶17)

The CBA only provides for two (2) contractual classifications of workers who work in the pressroom, Journeymen and Junior Pressmen (also known as apprentices) (¶18). A third category of worker, existing only in the pressroom of Defendant Post, is that of Permit Journeymen (¶¶21-25) workers who are given a permit to work as Journeymen, without having the actual title of full Journeyman. Plaintiff Paulino is one of seven (7) Permit Journeyman, of which three (3) are minorities. A permit can be revoked by Defendant Post at anytime. A fourth and final classification of worker is called a Casual (¶27-30). A Casual is a worker who is neither a Union member, nor an employee of Defendant Post. Casuals are used by Defendant Post to meet staffing needs when Pressmen are unavailable to work. Once casuals attain the required number of shifts during a specified six (6) month period, they are entitled to become a member of Defendant Union, and will be placed on a Shop Priority List as Junior Pressmen (hereinafter "Juniors" or "Apprentices"). The current number of shifts required is 124, changed from 110 in or about 2006. When the number of required shifts was changed, most of the individuals affected were minorities, including Plaintiff Lee, making it difficult for casuals to join the Union and advance to Juniors or Journeymen.

The newspaper industry maintains a mechanism called the Shop Priority List which is a list ranking individuals by seniority (within each individual newspaper). This dictates preference and the order in which assignments for work are given. (¶38). The list is compiled based upon the shifts worked by the individual when they were casuals, and

then apprentices. The 2000 Union By-laws established the right of all apprentices to become Journeyman after a period of four (4) years and after passing a Union-created and administered exam. (¶¶ 41, 58). These By-laws gave the President of the Union the right to make Journeymen as he saw fit (¶¶44-55, 59). In or about December 2005, all of the lists were frozen, so no Journeymen could be made (¶91). This was after numerous Caucasian individuals were made Journeymen from within Defendant Post.

The Joint Apprenticeship Committee (hereinafter "JAC") is a joint Union-newspaper list, maintained citywide, which also determines when an individual is eligible for Journeyman status (¶49). Finally, there is a Revisions List, which also uses a formula to determine when individuals are eligible for promotion to Journeyman status. At any one time, there could be three (3) lists used to determine an individual's eligibility to become a Journeyman. There is also a Joint Apprenticeship Committee specifically set up between Defendant Union and Defendant Post.

In or about May 2006, eleven (11) individuals from the New York Daily News were transferred to the New York Post as part of a "Commercial Paper Agreement." Upon information and belief, all but one (1) of these individuals were Caucasian. Upon information and belief, these individuals were elevated to Journeyman status shortly prior to the transfer, so as to preclude Defendants from issuing additional Permits to those eligible within the Post to be elevated. (¶91). The use of these transferred non-minority individuals acted to diminish the amount of work Plaintiffs would be eligible to do, and therefore, making them unable to attain the required amount of hours for advancement (¶95).

Also, in or about 2006, the Union changed the test required for individuals to become Journeymen after their four (4) years as Apprentice. Plaintiff Paulino and others qualified for Journeyman status after passing the original test. However, the Union altered the test and created a new computerized system. It will now take an Apprentice, and Permit Journeymen, approximately two (2) additional years to complete the process for full Journeyman status (¶¶109-110).

There are currently no women Journeymen (¶103), and currently no African American, Hispanic, or other minority Journeymen or Forepersons (¶106). Plaintiffs' allege a pattern or practice of disparate discriminatory treatment dating back to as early as 2000 when the most recent CBA was signed, but specifically allege instances of discrimination in or about late 2005 when the lists were frozen, preventing certain minority Plaintiffs from becoming Journeymen and also the transfer of eleven (11) individuals from the New York Daily News, again, preventing the Plaintiffs herein from achieving Journeyman status.

### III. ARGUMENT

### STANDARD OF REVIEW

The Court should not dismiss a complaint pursuant to Federal Rule of Civil Procedure (hereinafter "F.R.C.P.") 12(b)(6) unless it appears beyond belief that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985), citing *Conley v. Gibson*, 355 U.S. 41, 45-6, 78 S.Ct. 99, 101-102 (1957). A complaint need only provide a "short and plain statement of the claim showing [] the pleader is entitled to relief. *Walter v. Westdeutsche Rundfunk, Ard.*, Not Reported in F.Supp 2d 2004 WL 1052776, (S.D.N.Y.

2004), citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998

(2002), quoting F.R.C.P. 8(a) (2).  This Rule does not require the claimant to set out in

detail the facts upon which he or she bases a claim, but only that he or she gives a

statement of his or her claim that will give defendant 'fair notice of what [his or her]

claim is and the grounds upon which it rests.'" *Russell v. Northrop Grumman

Corporation*, 921 F. Supp. 143, at 146 (E.D.N.Y. 1996), citing *Conley*.  It is settled law

this standard is applied with even greater force where a plaintiff alleges civil rights

violations. *Hernandez v. Coughlin*, 18 F.3d 133 (2d. Cir. 1994

   On a motion to dismiss, a court must accept as true all factual allegations

contained in the Complaint and exhibits attached to it, and must draw all reasonable

inferences in favor of Plaintiff.  See *Conley*, infra.  A motion to dismiss may be granted

"only if it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *Walter*, infra, citing *Swierkiewicz*, infra, at 514,

598 (internal quotation marks and citations omitted).  In a 12(b) (6) motion to dismiss,

the task of the court is merely to assess the legal feasibility of the complaint, and not to

assay the weight of the evidence which might be offered in support thereof." *Ryder

Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d

Cir. 1984) (internal quotation marks omitted).  A complaint is also "deemed to include

any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d

Cir. 2002) citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d

Cir. 1995) quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.

1991).

Most importantly, the appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Russell* at 146, <u>citing</u> *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 124 (2d. Cir. 1991) (plaintiff is **not** compelled to prove his case at the pleading stage) (emphasis added).

Through the construction of an exceedingly liberal standard which a plaintiff must meet to avoid being subject to dismissal for failure to state a claim, the drafters of the Federal Rules of Civil Procedure have made the authorization of a summary dismissal infrequently justified. *Russell*, <u>supra</u> at 148, <u>citing</u> *Acoustica Associates, Inc., v. Powertron Ultrasonics Corp.,* 28 F.R.D. 16, 18-19 (E.D.N.Y. 1961).  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. *Roeder v. General Signal Corp*, 901 F.Supp. 124, at 125 (W.D.N.Y. 1995), <u>citing</u>, *Scheuer* at 235, 1686.

As will be shown below, the Complaint and in the alternative, the First Amended Complaint, establishes Plaintiffs are entitled to discovery and to offer evidence in support of their claims for relief.  Accordingly, the Union's Motion to Dismiss must be denied in its entirety.

## IV. <u>THE INSTANT ACTION IS NEITHER A CLASS ACTION UNDER RULE 23 NOR A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT</u>.

Permissive joinder, under Federal Rule of Civil Procedure 20 states "all persons may join in one action as plaintiffs if they assert any right to relief, jointly, severally, or in the alternative, in respect of, or arising out of the <u>same transaction, occurrence, or</u>

series of transactions or occurrences, and if any questions of law or fact common to all these persons will arise in the action." F.R.C.P. 20 (a) (emphasis added).

Defendant Union's Motion Papers assert certain Plaintiffs do not have standing to challenge ongoing discrimination with respect to other Plaintiffs, specifically those who are Junior Pressmen do not have standing to challenge what they contend is ongoing discrimination with respect to Casuals. (Def. Brief at p. 11, fn. 11).

The purpose of the rule pertaining to permissive joinder of parties is to promote trial convenience and to expedite final determination of disputes. *Fair Housing Development Fund Corp., v. Burke*, 55 F.R.D. 414 (E.D.N.Y. 1972). The rule pertaining to permissive joinder of parties requires for joinder the existence of questions of law or fact common to the present parties and those to be joined and the assertion on behalf of each of the plaintiffs of claims which relate to, or arise out of, a single transaction or occurrence or series of transactions or occurrences. *Id.* at 422.

There is no rigid rule as to what constitutes the same series of transactions or occurrences for purposes of joinder under Rule 20. *Vulcan Society of Westchester County, et al., v. Fire Department of the City of White Plains, et al.*, 82 F.R.D. 379 (S.D.N.Y. 1979), citing *Hall v. E.I. DuPont De Nemours & Co.*, 345 F.Supp. 353, 381 (E.D.N.Y. 1972). The requirements of Rule 20 should be given a liberal interpretation. *Id.*, *Hercules, Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 106 (S.D.N.Y. 1976). In *Vulcan*, each of the plaintiffs alleged a pattern and practice of discrimination by the defendants, such conduct including the use of exams which discriminate against blacks. Judge Sweet of this Court, found the plaintiffs sufficiently alleged the exams are a part of

7

a series of exams or occurrences, of similar type, preparation and construction, and with similar purposes and goals. *Vulcan* at 387.

Plaintiffs in this matter allege a pattern and practice of discrimination in hiring practices perpetrated over the course of many years by Defendants Union and Post clearly arising out of the same transactions and/or occurrences. It is therefore proper, under F.R.C.P. Rule 20, to proceed with all of the named plaintiffs herein, and they do not need to be similarly situated as with a Rule 23 Class Action or a Collective Action under the Fair Labor Standards Act.

## V. A PATTERN AND PRACTICE COMPLAINT CAN ASSERT CLAIMS OCCURRING OUTSIDE OF THE 300-DAY EEOC FILING PERIOD BASED UPON THE CONTINUING VIOLATIONS DOCTRINE.

Defendant asserts all of Plaintiffs' claims are time-barred, other than the May 2006 transfer, which will be discussed *infra*, inasmuch as they occurred outside of Title VII's 300-day limitations period (Def. Brief at 4, 10). Defendant relies on *Ledbetter v. Goodyear*, 127 S.Ct. 2162 (2007) for the assertion all of Plaintiffs' allegations are time-barred. Plaintiffs filed their EEOC charge approximately one (1) year prior to the decision in *Ledbetter*. Furthermore, the issues in *Ledbetter* involved disparities in pay rates over the course of a number of years, not a pattern and practice of discrimination, which triggered the filing period every time a pay check was issued. The Court held discrete discriminatory acts triggering time limit for filing EEOC charge could only be discriminatory pay decisions. *Id.*

A systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period, therefore constituting a continuing violation. *EEOC v. Kovacevich*, Slip Copy, 2007 WL 1174444

(E.D. Cal. 2007). The continuing violations theory recognizes the principle a plaintiff may be able to recover under Title VII if he or she can demonstrate a pattern or practice of discrimination that has continued to the present, notwithstanding their ability to prove specific instances of discrimination personally suffered at the hands of the defendant within the limitation period of Title VII..." *Kovacevich,* at 7, <u>citing</u>, *Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1982), <u>order modified</u>, 742 F.2d 520 (9th Cir. 1984). In order for a violation to be continuing, it must involve a practice, continued over a period of time, which operates to injure the plaintiff either individually, or as a member of a class to which the plaintiff belongs. *Kovacevich,* at 8.

A plaintiff can establish a continuing violation in two (2) ways: first, by showing a series of related acts, one or more of which are within the limitations period. This would be considered a serial violation. A serial violation is established if the evidence indicates the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period. A sufficient relationship may exist where the acts are 'plausibly related as acts of discrimination...'" *Kovacevich* at 9. The second way to establish a continuing violation is to show a systemic policy or practice of discrimination that operated, in part, within the limitations period. Systemic violations involve 'demonstrating a company wide policy or practice' and most often occurs in matters of placement or promotion." *Id.* A systemic violation claim 'requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies, such as hiring, promotion, training and compensation.'" *Kovacevich* at 14, <u>citing</u> *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998). The Fifth Circuit has held 'if the mere existence of a policy is

sufficient to constitute a continuing violation, it is difficult to conceive of a circumstance in which a plaintiff's claim of an unlawful employment policy could be untimely." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 258, 533 (5th Cir. 1986). "Pattern-or-practice claims cannot be based on 'sporadic discriminatory acts,' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." See *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

No Court has ruled on the question of how Title VII's filing deadlines should be applied to pattern-or-practice claims based on a series of discriminatory acts, some of which occurred outside the limitations period. *Kovacevich* at 16. The Court in *Kovacevich* held that the matter of whether pattern-or-practice claims which fell outside of the Statute of Limitations is not solely a matter of law. The Court held this requires factual development during discovery, and foreclosing pre-limitations period claims is premature on this record." *Id.* at 19.

To fit within the continuing violations doctrine for timeliness of discrimination claims, plaintiffs must show either a series of related acts or continuing discriminatory system. *Adames v. Mitsubishi Bank, LTD.*, 751 F.Supp. 1565 (E.D.N.Y. 1990).

The Supreme Court has specifically left open the issue as to whether the continuing violations theory applies to "pattern-or-practice" cases brought by private litigants. *Employees Committed for Justice v. Eastman Kodak Company*, 407 F.Supp. 2d 423 (W.D.N.Y. 2005), *citing National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, n. 9, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002). As was decided in the *Employees* case, "determining the applicability of the continuing violation theory at this stage of the

litigation [in the Motion to Dismiss phase] is unwise given the nature of the factual allegations in the amended complaint." *Employees*, at 441. See *Branch v. Guilderland Cent. School District*, 239 F.Supp. 2d 242, 254 (N.D.N.Y. 2003). The instant case is similar in that "Plaintiffs allege the actions of defendants upon which their suit is based constitute a 'policy' or 'custom' and thus, the continuing violations theory may be applicable." *Id.* See also *Sunshine v. Long Island University*, 862 F.Supp. 26 (E.D.N.Y. 1994).

Like Federal Courts, New York Courts recognize the continuing violations doctrine. *Id.*, citing *McClary v. Marine Midland Bank*, 87 A.D.2d 982, 450 N.Y.S.2d 109 (4th Dep't 1982). New York may even broaden the doctrine as it focuses on 'whether the discriminatory practice had a continuing impact on the complainant." *Id.* Here, through further discovery, it will be clear the discriminatory practices employed by the Defendant had a continuing impact on all of the Plaintiffs.

Plaintiffs request this Court adopt the analysis in *Employees* and *Sunshine*, and after giving Plaintiffs all the reasonable inferences from the facts alleged, not only those that support their claims, but also those that defeat the statute of limitations defense, "[the Court must] deny the motion to dismiss [based upon actions] allegedly outside the applicable limitations period, and defer any determination as to the applicability of the continuing violations doctrine until a more complete factual record is before the Court." *Employees* at 442. (emphasis added).

## VI. <u>PLAINTIFFS STATE A CLAIM FOR RELIEF BASED UPON THE ALLEGATIONS IN THE COMPLAINT</u>.

Defendant argues Plaintiffs' allegation the May 2006 transfer of Journeymen from the New York Daily News is facially deficient. While the Complaint in this case did not completely allege specific information, all a Complaint serves to do is provide Defendant with notice of what their allegations and claims for relief are. Additionally, Defendant cannot claim to not have notice of these claims by these individuals, as they argue, and Plaintiffs do not dispute, no fewer than six (6) of the within Plaintiffs have filed separate actions alleging the same or similar pattern-or-practice of discrimination within the Union and the New York Post. Some of the actions complained of occurred subsequent to the filing of these additional complaints, specifically, Paulino I and II, and the lawsuits filed by Plaintiffs Desiree Wilson, Sherre Wilson, Olivia Wilson, and Jerome Watson (filed Complaints in 2005). Plaintiffs would like their day in Court to provide complete discovery through documents and testimony as to what they experienced both during the 300-day filing period, and also, what occurred prior to the filing period, and even continuing to the present day. Plaintiff Paulino is still not a Journeyman, currently in a position called "Permit Journeyman," when he has been eligible to be elevated to full Journeyman. He was unable to do so because of this May 2006 transfer, along with seven (7) other individuals. Through discovery it will be shown that all Caucasian individuals who were named Permit Journeyman were elevated to full Journeyman within six (6) months. While Plaintiffs concede the transferred individuals already had more seniority than the Junior Pressmen, Plaintiffs consider this to be an act of discrimination, as these seven (7) Permit Journeymen, three of which are minorities, should have been elevated to full Journeyman before outside Journeymen were brought in as part of the "Commercial Paper Agreement" ("CPA"). Another option would have been to hire more

Junior Pressman for those spots as sixth shift workers. The CPA was just another side agreement in an industry long known for nepotism and patronage, and the legitimate business reason proffered (creation of more jobs, increased revenue at the Post and job security for Union members) is clearly pretext for the discriminatory pattern-or-practice occurring at the New York Post.

Discovery would further clarify these issues and would finally put all of these issues in the open for the Court to decide, as the newspaper industry is very complex, and it would be inappropriate to dismiss the Plaintiffs' Complaint outright without engaging in discovery proceedings.

## VII. PLAINTIFFS' ALLEGATIONS STATE A CLAIM UNDER NEW YORK STATE HUMAN RIGHTS LAW.

Defendant states each of the association's members (here Local 2) must have, as a pleading requirement, authorized or participated in the allegedly discriminatory conduct due to the Union's status as an unincorporated association.

The Union prevented Casuals, Juniors and Permit Journeyman from voting on this Agreement which affected all of those categories of workers. The vote was taken to the entire Union membership and completely bypassed the Post employees, assuring the success of the vote. The majority of the Union membership at the Post did not receive any benefit from this CPA and the sixty-five (65) juniors and seven (7) Permit Journeymen have continued to be discriminated against. Taking the allegations in the Complaint as true, it is highly unlikely the Union members would have ratified such an Agreement, as it affects each and every individual named in this Complaint as Plaintiff.

## VIII. PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE AND SERVE AN AMENDED COMPLAINT.

## Rule 15(a) standard to amend Complaint

A party may amend the pleadings by leave of court when justice requires the amendment. Rule 15(a) Fed. R. Civ. P., "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given.'" *Id.*

Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests permission to file an amended complaint to clarify Plaintiff's claims of violations of law, rules or regulations that Defendant allegedly violated and state these violations created a pattern-or-practice of discrimination which adversely affected minorities, including African-Americans, Hispanics and women. Also, the Complaint filed via the Court's Electronic Filing system was missing the text of Page 5 of the original Complaint, and as such, Plaintiffs wish to correct that error by submission of an Amended Complaint, as well as correct errors in the numbering of paragraphs.

Plaintiffs are only seeking to clarify the general allegations propounded in the original Complaint (attached to the Declaration of Jennifer L. DeVenuti, Esq. in Support of Plaintiffs' Motion for Leave to File an Amended Complaint as Exhibit "A") and adhere to the pleading requirement to allege short, plain statements of fact.

14

Plaintiffs contend the pleadings on their face are sufficient to state a claim under Title VII and the New York State Human Rights Law. However, if the Court disagrees, justice requires the Plaintiffs to be allowed to clarify their claims. This is the first request for any amendments to the pleadings.

Proposed Amended Complaints cannot be futile. *Foman v. Davis*, supra. Title VII and New York State Human Rights Law require a Plaintiff to plead a *prima facie* case. To establish a *prima facie* case of discrimination, Plaintiff must show, by a preponderance of the evidence the following: (1) he is a member of a protected class; (2) the individual is qualified for the position in question; (3) there was an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).

Plaintiffs are members of the classes protected by Title VII and the New York State Human Rights Law. Plaintiffs are African Americans, Hispanics and women, all protected classes.

All the Second Circuit requires is "establishing the plaintiff's basic eligibility for the position at issue." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001); *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (holding Plaintiff need only show he "possesses the basic skills necessary for perfomance of [the] job."). All of the plaintiffs possessed the basic skills necessary for perfomance of the duties required by the Post.

An "adverse employment action is a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755

(2d Cir. 2004), quoting *Richardson v. New York State Department of Correctional Services*, 180 F.3d 426, 446 (2d Cir. 1999). "Examples of materially adverse changes include, but are not limited to, 'termination of employment, a demotion evidence by a decrease in wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices…unique to a particular situation.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003), quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

One of the adverse employment actions suffered by Plaintiffs came at the time the eleven (11) Journeymen were transferred from the Daily News in May 2006. This transfer prevented Plaintiff from being afforded opportunities to work as anything other than Casuals, Junior Pressmen and Permit Journeymen. The positions of Journeymen and Foreman and other positions of seniority were given to Caucasian males. Prior to the transfer, the Plaintiffs would have had more opportunities for advancement, but due to the continuous pattern-or-practice perpetrated and endorsed by the Defendant, they were unable to do so.

Plaintiffs were, and continue to be, denied work under circumstances giving rise to an inference of discrimination. The mere fact these work positions are being filled by individuals outside Plaintiffs' protected classes are sufficient to establish the required inference of discrimination at the *prima facie* stage of analysis. *Zimmerman v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

It is Plaintiffs' contention the Complaint is specific enough to satisfy the pleading requirements of Title VII and New York State Human Rights Law. Plaintiff has put Defendant on notice as to the claims and allegations therein. This amended complaint

comes before any discovery has been commenced, and is in response to Defendant's Pre-Answer Motion to Dismiss.

The purpose of Plaintiffs' proposed amendments to the complaint are to clarify and not to add new theories of liability or to cause delay. Plaintiffs feel the original complaint was pled with sufficient specificity, but if the Court rules otherwise, Plaintiffs respectfully request leave to file an Amended Complaint.

Plaintiff cited Title VII and New York State Human Rights Law in their Complaint, and pled, with sufficient specificity, the improper discriminatory actions taken by Defendant, thereby providing notice of the specific conditions underlying the allegations in the Complaint. *Barbara Kraus v. Robert Brandsetter*, 185 A.D.2d 302 (2d Dept. 1992). Since Defendant has filed and served a pre-answer motion, Plaintiffs contend this is an opportune time to request leave to file an amended complaint in this action to further clarify the allegations therein. Since there are no additional claims or additional allegations, Defendant suffers no prejudice by allowing the proposed amendments. *Granser v. Box Tree South, Ltd.*, 164 Misc. 2d 191, 623 N.Y.S. 2d 977 (Sup. Ct. NY Cty. 1994).

## CONCLUSION

This Court should allow this matter to proceed on all claims as set out in Plaintiff's complaint, or in the alternative, grant Plaintiffs leave to file and serve an Amended Complaint.

Dated: Farmingdale, New York
February 19, 2008

Respectfully submitted,

**FRANK & ASSOCIATES, P.C.**
*Attorneys for Plaintiff(s)*

By: _Jennifer L. DeVenuti_
Jennifer L. DeVenuti, Esq. (JD-5778)
Neil M. Frank (NF-0521)
500 Bi-County Blvd. 112N
Farmingdale, New York 11735
(631) 756-0400 – Telephone
(631) 756-0547 – Facsimile

To:
Daniel Engelstein, Esq. (DE-2499)
Levy Ratner, P.C.
Attorneys for Defendant Union
80 8th Avenue, 8th Floor
New York, New York 10011
(212) 627-8100 – Telephone
(212) 627-8182 – Facsimile

18