UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WILLY MALONE, JEROME WATSON, ROBERT
ABREU, DESIREE WILSON, EVA LEE, OLIVIA
WILSON, SHERRE WILSON, ANGEL HERNANDEZ,
NYTRICHA SMITH and DANIEL PAULINO,

<table>
<tr><td>Plaintiff,</td><td>07-CV-9583<br>(LTS) (GWG)</td></tr>
<tr><td>-against-</td><td>DECLARATION<br>OF JENNIFER L.<br>DEVENUTI, ESQ.</td></tr>
</table>

NEW YORK PRESSMEN'S UNION NUMBER 2
and NEWS CORP a.k.a. NYP HOLDINGS d/b/a
THE NEW YORK POST,

                                        Defendants.
------------------------------------------------------------------X

I, Jennifer L. DeVenuti, Esq., an attorney duly licensed to practice law in the State of New York, affirm under the penalties of perjury as follows:

1.      I am an attorney with the firm Frank & Associates, P.C., counsel for Plaintiffs WILLY MALONE, JEROME WATSON, ROBERT ABREU, DESIREE WILSON, EVA LEE, OLIVIA WILSON, SHERRE WILSON, ANGEL HERNANDEZ, NYTRICHA SMITH and DANIEL PAULINO (hereinafter "Plaintiffs") in the above-captioned matter. I am fully familiar with the facts set forth herein and make this Declaration in further support of Plaintiffs' Opposition to Defendant Union's Motion to Dismiss.

2.      Attached hereto as Exhibit "A" is the Complaint filed on October 26, 2008 in the instant matter.

Dated: Farmingdale, New York
       February 19, 2008

Respectfully submitted,

**FRANK & ASSOCIATES, P.C.**
Attorneys for Plaintiffs

By:    *Jennifer L. DeVenuti*
       Jennifer L. DeVenuti, Esq. (JD-5778)
       Neil M. Frank, Esq. (NF-0251)
       500 Bi-County Blvd., Suite 112N
       Farmingdale, New York 11735
       New York, New York 10112
       (631) 756-0400 – Telephone
       (631) 756-0547 -- Facsimile

EX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLY MALONE, JEROME WATSON, SAMMY NG,
ERIC BROCKINGTON, ROBERT ABREU, DESIREE
WILSON, EVA LEE, OLIVIA WILSON, SHERRE WILSON
ANGEL HERNANDEZ, MARCO GONZALEZ, NYTRICH
SMITH and DANIEL PAULINO,

OCT 26 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Civil No.

07 CIV 9583

                                    Plaintiffs,

            -against-                                COMPLAINT

NEW YORK PRESSMEN'S UNION NUMBER 2
and NEWS CORP aka NYP HOLDINGS d/b/a
THE NEW YORK POST,

                                    Defendants.

Plaintiffs, WILLY MALONE, JEROME WATSON, SAMMY NG, ERIC

BROCKINGTON, ROBERT ABREU, DESIREE WILSON, EVA LEE, SHERRE

WILSON, ANGEL HERNANDEZ, MARCO GONZALEZ, OLIVIA WILSON,

NYTRICHA SMITH and DANIEL PAULINO, by and through their attorneys, FRANK &

ASSOCIATES, P.C., complain and allege as follows:


## I.    PRELIMINARY STATEMENT

1. This action seeks monetary and affirmative relief to redress the deprivation of rights

secured to Plaintiffs under Title VII of the Civil Rights Act of 1964 (hereafter "Title

VII") and New York State Human Rights Law (hereinafter "NYHRL"), N.Y. EXEC. LAW

§296 *et seq.*.  This action arises out of a pattern and practice of intentional discrimination

engaged in by Defendants, acting in concert, as a continuous violation of the law over an

approximate ten year period.  Defendants consistently manipulated Seniority lists,

implemented new testing and shift requirements, applied rules unequally as to Union rules, membership, maintenance and qualifications and afforded non-minority employees preferential treatment, *inter alia*, in a manner which has a disparate impact on minority and women employees who are both Union members and employees of the New York Post owned by News Corporation (hereinafter "NYP"). Defendants have created, facilitated, maintained, perpetuated and enforced a pattern and practice of discrimination which has caused injury to Plaintiffs.

## II.    JURISDICTION AND VENUE

2.  This court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f) (3), 28 U.S.C. §§ 1331, 1337 and 1367.

3.  This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. § 1367.

4.  This action properly lies in the United States District Court for the Southern District of New York, pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful discriminatory conduct occurred primarily and substantially within Bronx County, State of New York.

5.  This Court has the power to issue declaratory relief. 28 U.S.C. §§ 2201 and 2202.

6.  Plaintiffs filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").

7.   A Third Party Certification Form (#151) was filed with the EEOC along with a formal charge of discrimination on behalf of Plaintiffs aggrieved by Defendant's conduct, continuous discriminatory practices, implementation and employment of unlawful programs and policies in violation of law.

8. Plaintiffs bring this action within ninety (90) days of the receipt of their Notice of Rights issued by the EEOC on or about July 30, 2007.

### III.   PARTIES

9. At all times herein, Plaintiffs are or were current and/or former employees of Defendants, NYP and members of Defendant Union.

10. At all times herein mentioned, Plaintiffs are minority and/or women employees of the NYP as well as Defendant Union members.

11. At all times relevant, Plaintiffs, are/were an "employee" or "employees" and a "person" within the meaning of § 292(1) of the NYHRL and Title VII.

12. At all times relevant, Defendant, NYP is a foreign corporation, organized under and existing by virtue of the laws of the State of Delaware, doing business at 1211 Avenue of the Americas, New York, N.Y., 10036 with operational facilities located at 100 East 132nd Street, Bronx, New York, engaged in the business of news reporting and printing.

13. At all times herein mentioned, Defendant, NYP employed more than fifteen (15) employees and is an "employer" within the meaning of § 292(5) of the NYHRL.

14. At all times relevant, Defendant, NEW YORK PRESSMEN'S UNION NUMBER 2 (hereinafter "Union"), is a Union, organized under and existing by virtue of the laws of the State of New York, doing business at 275 Seventh Avenue, Suite 1500, New York, N.Y., 10001.

15. Defendant Union is the designated bargaining representative of its members including the majority of Plaintiffs who bring suit herein.

3

## IV.    BACKGROUND

16. Defendant Union is the purported collective bargaining representative for employees that work in the pressroom at the NYP.

17. Defendant Union has a collective bargaining agreement (herein "contract" or "CBA") with co-Defendant.

18. The contract between Defendants sets forth two (2) separate classifications of employees who perform work in the pressroom, Journeymen (a.k.a. "Pressmen") and Junior Pressmen (a.k.a. "Junior" (s) or "Apprentices").

19. Journeymen have seniority over Apprentices.

20. As such Journeymen receive assignments and work over any other employee.

21. A third classification of employee, existing only at the NYP, is that of Permit Journeymen.

22. Permit Journeymen, a hybrid classification or sub-class of employee are Apprentices who are given a permit to work as Journeymen at the NYP

23. However, within the newspaper printing industry, there is no classification Permit Journeymen.

24. When Permit Journeymen work for other newspapers, outside of NYP, those individuals are recognized only as Apprentices.

25. A permit can be revoked at any time by Defendant NYP.

26. Defendant NYP created this sub-class rather than allow these individuals to become Journeymen, because this sub-class includes women and minorities.

27. A fourth and final classification of laborer or worker is known as a Casual.

28. A casual is a laborer or worker who is neither a Union member nor an employee of Defendant NYP.

29. Casuals are used by Defendant NYP to meet staffing needs when Pressmen, (either Apprentices or Journeymen) are unavailable to work.

30. Once a casual attains the required number of shifts (currently 124 shifts within a specified six (6) month period), he/she is placed on a shop priority list and becomes a Union member.

31. Upon information and belief, in order to become a Manager/Foreman, you must first become a Journeyman.

32. All current Foremen in the NYP Pressroom are Male Caucasian.

33. Upon information and belief, as part of their job responsibilities Foremen select individuals to fill openings, on a daily basis, arising from an employee's failure to appear at the NYP facility from a pool of persons identified as "shapers" or "casuals."

34. If an individual satisfies the shift requirement, they become Apprentices, ("Junior Pressman") and become employees of Defendant NYP and members of Defendant Union.

35. Coincidently, as certain minority Plaintiffs began to approach eligibility for apprenticeship, Defendant Union changed the number of shifts required to be worked from 110 to 124.

36. At the time of the increase, the majority of individuals affected were minorities, including women.

37. Each classification group is organized by a seniority list, created and maintained by both Defendants concertedly.

38. A shop (NYP, NY Daily News and NY Times) priority list is a list ranking individuals by seniority and therefore dictates preference and order of assignment and/or placement.

39. Upon information and belief, these "seniority" lists are created in more than one uniform manner.

40. Plaintiffs know these lists, maintained by Defendants, are monitored and amended with bias towards minorities and women.

41. Pursuant to contract, a Union member becomes eligible to be employed as a Journeyman at the satisfactory conclusion of his or her term of Apprenticeship and provided he/she passes a test designed, and administered by the Union.

42. By contract, the minimum length of Apprentice service before elevation to Journeyman status is four (4) years.

43. Certain Plaintiffs were advised they were eligible for Journeymen status after four (4) years of service.

44. Defendant Union maintains the right to name Journeymen on an "as needed" basis as they see fit.

45. An all Caucasian Board recommends a member for elevation to Journeyman status.

46. Only Journeymen (approximately 98% Caucasian) vote on this issue.

47. When an individual is placed on a seniority list, the Union establishes a date for that person, which is used to determine the order in which one becomes eligible to be advanced to Journeymen status.

48. The member's date or placement on the list is based, in part, upon the number of shifts worked by the individual when he/she was a casual, and then as an Apprentice.

49. The Joint Apprenticeship Committee, (a joint union-publisher committee established by the publisher's collective bargaining agreement with the Union), maintains a city-wide priority list of all members (Union-wide) which determines when an employee may be eligible for advancement to Journeymen status.

50. There are at a minimum two (2) to three (3) separate lists based upon "seniority".

51. The various lists are created and maintained based on a severe pattern and practice of discrimination at the shape, which follows an individual who has been aggrieved throughout their career.

52. Upon information and belief, rather than maintain one seniority list, numerous lists are maintained to cover up actual discrimination and manipulation of an individual's placement on each list.

53. The shape is the term used for the location and process of being selected to work shifts when Union members are unavailable to work.

54. Foremen, all of which are Caucasian, conduct the selection process at the shape.

55. The discrimination exercised by Foremen at the shape has an everlasting detrimental effect on those individuals aggrieved by virtue of their discriminatory placement on the various lists.

56. Individuals, such as the above collective membership were repeatedly denied work by Foremen at the shape in favor of Caucasians.

57. Today, Plaintiffs continue to be affected by discrimination due to this denial of work at the shape; Plaintiffs are now in a position of lesser preference on the various seniority lists.

58. The 2000 Union By-Laws established the right of all Apprentices to become Journeymen.

59. The By-laws were arbitrarily amended in 2001 to permit the President of the Union to make Journeymen as he sees fit.

60. Since in or about January 2006, Defendants have used non-minority Journeymen from other newspapers to work at the Post, thereby depriving employees at the NYP of opportunities to work and gain seniority in their attempt to qualify for Journeymen status.

61. In or about May 2006, Defendants agreed, without a fully representative employee vote, to transfer fifteen (15) Journeymen from the Daily News to work on allegedly new "commercial work" at the NYP printing facility in the Bronx.

62. Eleven (11) individuals were transferred to the Post pursuant to the above agreement.

63. Defendants reserved their right to transfer the remaining individuals when they saw fit.

64. All but one of the transferees were Caucasian Males.

65. Throughout the course of Plaintiffs' tenure, Defendants allowed those who worked at the NYP priority over all outside Journeymen or otherwise.

66. Defendants changed this policy to benefit non-minority Journeymen.

67. Defendants altered this policy to ensure work for non-minority Journeymen by providing access to preferred shifts, shift priority and increased work opportunities.

68. The policy was changed to allow outside Pressmen who, upon information and belief, are 90% Caucasian, to work shifts which had previously been provided to Plaintiffs at the NYP.

69. The new policy stated: If the number of Pressmen (Union members either Journeymen or Apprentices) available at any time was insufficient to meet the staffing needs of the employer, outside Pressmen from other newspapers are entitled to work in order of seniority.

70. Historically, Apprentices with four (4) or more years of service filled the vacancies left open by Journeymen and then outside Journeymen filled the remaining open spots.

71. Currently, outside Journeymen have the preference ahead of employee Apprentices.

72. Thus, there are neither female nor African-American Journeymen in the NYP Pressroom.

73. There is not one minority or woman Pressman Foreperson in the NYP Pressroom.

74. Upon information and belief, all transferees were made Journeymen prior to the transfer to obtain seniority over all Permit Journeymen at the New York Post.

75. All transfers were placed at the bottom of the upper class of Journeymen, thus displacing employees below them.

76. Specifically Apprentices were formally moved up to positions traditionally worked by Journeymen where employees would receive premium compensation and benefits.

77. Apprentices would work as Journeymen to fill any vacancies left open by Journeymen who did not show up for the facility to work.

78. These transferees were placed ahead of all Permit Journeymen, all Juniors (Apprentices) and all Casuals who had worked at the NYP, in some instances for over eight (8) years.

## V. FACTUAL ALLEGATIONS

79. In or about 1998, certain Plaintiffs began to work in Defendant NYP's Pressroom the Bronx.

80. Plaintiffs were given assignments most non-minority employees did not wish to accept.

81. These assignments included cleaning the floor, dumping the garbage, changing the ink and retooling paper.

82. Plaintiffs were provided these assignments by NYP Foremen who were all Caucasian.

83. NYP Foremen specifically chose non-minority employees over minority employees so they could meet the shift requirement in less time.

84. Certain Plaintiffs began to work shifts due to vacancies left open by employees who either failed to appear for their shift or retired.

85. Defendant NYP had no choice but to hire minority and women casuals to complete the necessary work required to keep their business operational.

86. Certain Plaintiffs met the shift requirements and eventually became employees and Union members.

87. Certain Plaintiffs were then placed on a Seniority list at the NYP.

88. Certain Plaintiffs were then concurrently placed on a Seniority list for the Union.

89. Throughout the course of Plaintiffs' tenure working at the NYP, Defendants, acting in concert, have mismanaged and manipulated the hiring order in a discriminatorily manner in allowing non-minority laborers' to work over minorities, though minorities are entitled to similar opportunities.

90. Defendants, acting in concert, have implemented other policies and programs and entered into agreements limiting employment opportunities for women and minorities to work certain shifts (including but not limited to 6 shift weeks and) to gain Journeymen experience because of their race, color, sex and/or national origin, thereby preventing Plaintiffs from achieving Journeymen status.

91. Upon information and belief, once Defendants observed certain minority employees were approaching eligibility to become Journeymen, Defendant NYP halted extending any further permits to employees.

92. Defendants transferred in numerous Journeymen to work ahead of all named Plaintiffs herein thus depriving them of work opportunities either at a premium rate or at all.

93. The transferees displaced minorities and women at the NYP by cutting ahead of every other non Journeymen NYP employee.

94. Transferees were predominantly Male Caucasians.

95. The use of non-minority transferees unnecessarily eliminated work opportunities relating to overtime, sixth shifts and other benefits at the NYP, thereby preventing minorities and women from attaining the requisite experience to qualify as Journeymen, and the number of shifts for casuals to become apprentices.

96. The displacement of Plaintiffs at the NYP has had a disparate impact on minorities and women due to their ranking on seniority lists, based upon the discriminatory practices of Defendants at the shape where Caucasian shapers were and are given preferential treatment over minorities and women.

97. In addition to the commercial work, the Journeymen transferees have been given priority over minorities and women at the NYP for work traditionally performed by NYP employees, overtime and sixth shifts, preference in days off and sick days.

98. The alleged legitimate business necessity to cause these transfers was a cover and pretext for clear and outright discrimination.

99. Upon on information and belief, the majority of the transferees did not work on the "new" alleged "commercial" projects.

100.    The "commercial" work, the reason for the transfers, has recently diminished and the transferees are no longer necessary.

101.    Rather than making minority and women Journeymen from within, Defendants effectuated transfer upon transfer of Caucasian News Journeymen.

102.    The NYP had the workforce in place, including Plaintiffs, to handle an alleged increase in work, yet Defendants transferred numerous male Caucasians from the Daily News as a pretext for discrimination, rather the give this work to Plaintiffs.

103.    There are no women Journeymen employed at the NYP.

104.    Today, casuals and Apprentices are used more and more sparingly as Defendants have allowed for and executed the transfer of numerous employees who now work before a major cluster of minority employees.

105.    There are no women Journeymen in the Union.

106.    There are no African-American nor any West Indian-American Journeymen employed at the NYP.

107.    There are no minorities or women holding actual leadership positions in the Union or within the NYP Pressroom.

108.    Minority and women employees at the NYP have no voice and continue to have their rights trampled upon unjustly without fair representation by the Union, who endorses and promotes discrimination.

109.    Upon information and belief, in order for an apprentice to become eligible for Journeymen status, a candidate must pass a Union credited and administered test.

110.    Upon information and belief, the Union altered the testing and certification spacing requirements creating a new computerized system, which, at a minimum, will take an Apprentice over two (2) years to complete in order to further impede the advancement of minorities and women to Journeymen status.

111.    Upon information and belief, Defendants will continue to transfer additional non-minority Journeymen into the NYP, while minority and women employees of the NYP are already in place as permit Journeymen. Apprentices and Casuals but will continue to suffer adverse employment actions.

112.    The transfers are designed to guarantee opportunities for Caucasian Journeymen at the expense of NYP employed minorities, women, and other Apprentices and Casuals.

113.    Upon information and belief, Foremen are afforded great discretion the selection process, and often base their selections on race, and have made their selections in favor of non-minority, non-female shapers or casuals.

114.    Defendants' actions have had the intention and effect of curtailing once available, specific work opportunities for minorities and women-specifically overtime and sixth shift work.

100.    Defendants have increased the number of shifts required for casuals to obtain a Union card.

101.    The increased requirement has had and continues to leave a disparate impact upon minorities and women, creating clear roadblocks and preventing them from gaining Union membership, which is a necessary step to be elevated to Junior Pressmen and eventually Journeymen.

102.    The elevation of shift requirement was implemented to present the minority-filled group of casuals with increased difficulty become part of the bargaining unit.

103.    The current requirements have made virtually impossible for non-Caucasians to become Union members at the NYP in recent history.

104.    Defendants intentionally favor non-minority male casuals over minority and female casuals in the selection of casuals from the "shape."

105.    Defendants have acted in concert to manipulate seniority lists to prevent minorities from becoming Journeymen by placing non-minorities ahead of minorities on the seniority list in total disregard of seniority or actual shifts worked.

106.    Defendants favor non-minorities by allowing Caucasian part-time employees to become Journeymen in violation of the Union By-Laws, which allow only full-time employees to become Journeymen.

107.    Defendants allow previously inactive Caucasian employees who have failed to maintain the required shift minimum, to be retained, and, in at lease one instance, become a Journeyman.

108.    Caucasian part-time employees have been given preferential treatment, full-time benefits and, unlike minorities and women, are not required to contribute towards the cost of their health insurance.

109.    Defendants acting in concert have given repeated preference to part-time Journeymen, though no such classification of employee exists on paper, over minority employees and casuals.

110.    Defendants acting in concert have created and endorse a double standard in regard to treatment different groups based upon race and gender.

111.    Defendant Union failed on numerous occasions to take up the grievances of Plaintiffs as to certain issues raised herein.

112.    Defendant Union failed on numerous occasions to undertake its responsibility to Plaintiffs, and represent them fairly and equally as compared to non-minority employees.

113.    Defendant Union altered testing requirements for Journeymen eligibility once it became apparent that individual Plaintiffs were due consideration for recommendation for elevation.

114.    Defendants acting in concert failed to allow certain Plaintiffs to maintain membership in two Unions while working for the NYP.

115.    Defendants acting in concert disciplined employees and casuals differently based on protected characteristics.

116.    In at lease two instances, two (2) minority employees were terminated for conduct which otherwise was not subject to termination.

117.    Defendants collectively support a pattern and practice of disparate treatment evidenced in striking imbalances on the seniority lists and leadership positions.

118.    Defendants engaged in a discriminatory pattern and practice which is purposely, intentionally and willfully designed to exclude and prevent women. African-American, West Indian-American, Hispanic and Asian-American employees        from achieving Journeymen status.

119.    Defendants, acting in concert, continue to engage in an unlawful program of discrimination causing a disparate impact on minority and women employees.

120.    Defendants, acting in concert, continue to engage in an unlawful program of discrimination.

121. The above-described discriminatory policies, pattern and practice, mechanisms and unlawful programs employed and implemented by Defendants on a continuing basis, cause injury to Plaintiffs.

122. Defendants' discriminatory policies, patterns, practices, and mechanisms (such as discriminatory seniority lists and unnecessary transfers) are intended to circumvent the required elevation of minority and women employees at the NYP from attaining Journeymen status, resulting in a severe statistical imbalance of minorities and women employed as Journeymen at the NYP.

123. The above described practices have had a disparate impact on minorities employed at the NYP over the course of many years.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### (Title VII)

124. Plaintiffs repeat and reallege each and every allegation herein.

125. Defendants intentionally discriminated against Plaintiffs in the terms, conditions and privileges of employment in violation of Title VII.

126. Defendants caused damages to Plaintiff.

127. Plaintiffs are entitled to relief.

### SECOND CLAIM FOR RELIEF
#### (New York Executive Law §296)

128. Plaintiffs repeat and reallege each and every allegation herein.

129. Defendants intentionally discriminated against Plaintiffs in the terms, conditions and privileges of employment in violation of N.Y. Exec. Law §296.

130.Defendants caused damages to Plaintiffs.

131.Plaintiffs are entitled to relief.

## VI.    DEMAND FOR JURY TRIAL

132.Plaintiffs repeat and reallege each and every allegation contained herein.

133.Plaintiffs hereby demand a trial by jury.


**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendant herein alleged,

Plaintiffs demands judgment:

    a.  Declaring Defendants violated the aforementioned statutes;

    b.  Declaring Defendants participated in a continuous course of conduct, when taken as a
whole, has a cumulative effect on Plaintiffs, adversely pertaining to their employment
rights.

    c.  Declaring Defendants caused damages to Plaintiffs.

    d.  Declaring Defendants acted in conscious and intentional disregard of Plaintiffs'
rights.

    e.  Awarding Plaintiffs compensatory damages, back pay, front pay and all benefits
which they would have been afforded but for said discrimination in an amount to be
determined at trial;

    f.  Awarding  punitive damages as to Plaintiff's Federal Claim where appropriate under
law;

    g.  Awarding Plaintiffs pre-and post-judgment interest;

    h.  Awarding Plaintiffs reasonable attorneys' fees and the costs and disbursements of this
action.

i.   For such other and further relief as may be just and proper.

Dated:       Farmingdale, New York
             October 26, 2007

                                        Respectfully Submitted,

                                        **FRANK & ASSOCIATES, P.C.**

                                        Neil M. Frank (NF 0521)
                                        *Attorneys for Plaintiffs*
                                        500 Bi-County Blvd., 112N
                                        Farmingdale, New York 11735
                                        (631) 756-0400
                                        nfrank@laborlaws.com
                                        isack@laborlaws.com
                                        support2@laborlaws.com

18