# EX B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLY MALONE, JEROME WATSON, ROBERT ABREU, DESIREE WILSON, EVA LEE, OLIVIA WILSON, SHERRE WILSON, ANGEL HERNANDEZ, NYTRICHA SMITH and DANIEL PAULINO,

                Plaintiffs,

-against-

NEW YORK PRESSMEN'S UNION NUMBER 2 and NEWS CORP. a.k.a. NYP HOLDINGS a.k.a. NEWS AMERICA, d/b/a THE NEW YORK POST,

                Defendants.

CASE NO.:
07-CV-9583
(LTS)(GWG)

[PROPOSED]
AMENDED
COMPLAINT

---

Plaintiffs, WILLY MALONE, JEROME WATSON, ROBERT ABREU, DESIREE WILSON, EVA LEE, SHERRE WILSON, OLIVIA WILSON, ANGEL HERNANDEZ, NYTRICHA SMITH and DANIEL PAULINO, (hereinafter "Plaintiffs") by their attorneys, FRANK & ASSOCIATES, P.C., complain and allege as follows in their First Amended Complaint:

## I.    PRELIMINARY STATEMENT

1. This action seeks monetary and affirmative relief to redress the deprivation of rights secured to Plaintiffs under Title VII of the Civil Rights Act of 1964 (hereafter "Title VII)" and New York State Human Rights Law (hereinafter "NYHRL"), N.Y. EXEC. LAW §296 *et seq.*, and N.Y.C. Admin. Code § 8-107 *et seq.* This action arises out of a pattern and practice of intentional discrimination engaged in by Defendants, acting in concert, as

a continuous violation of the law over an approximate ten (10) year period. Defendants manipulated and misused Seniority lists, implemented new testing and shift requirements, applied rules unequally as to Union rules, membership, maintenance and qualifications and afforded non-minority employees preferential treatment, *inter alia*, in a manner which has had and continues to have a disparate impact on minority and women employees, both Union members and employees of the New York Post owned by News Corporation (hereinafter "NYP"). Defendants have created, facilitated, maintained, perpetuated and enforced a pattern and practice of discrimination causing injury to Plaintiffs.

2. Plaintiffs allege herein numerous violations of Title VII, NYSHRL and the NYCHRL, however specifically, Plaintiffs allege the freezing of the seniority list in or about December 2005 and the transfer of the eleven (11) New York Daily News Journeymen in or about May 2006, contributed and perpetuated the pattern and practice of discrimination.

## II.    JURISDICTION AND VENUE

3. This court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) (3), 28 U.S.C. §§1331, 1337 and 1367.

4. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.S.C. §1367.

5. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 42 U.S.C. §2000e-5(f)(3) because the unlawful discriminatory conduct occurred primarily and substantially within Bronx County, State of New York.

6. This Court has the power to issue declaratory relief pursuant to 28 U.S.C §§2201 and 2202.

7. Plaintiffs filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").

8. A Third Party Certification Form (#151) was filed with the EEOC along with a formal Charge of Discrimination on behalf of Plaintiffs aggrieved by Defendant's conduct, continuous discriminatory practices, implementation and employment of unlawful programs and policies in violation of law.

9. Plaintiffs bring this action within ninety (90) days of the receipt of their Notice of Right to Sue issued by the EEOC on or about July 30, 2007.

10. Plaintiff filed the original Complaint in this action on or about October 26, 2007.

### III. PARTIES

11. At all times relevant herein, Plaintiffs are or were current and/or former employees of Defendant NYP and members of Defendant Union.

12. At all times herein mentioned, Plaintiffs are minority and/or women employees of the NYP as well as Defendant Union members.

13. At all times relevant herein, Plaintiffs are or were "employees" and "persons" within the meaning of § 292(1) of the NYSHRL, NYCHRL and Title VII.

14. At all times relevant, Defendant, NYP is a foreign corporation, organized under and existing by virtue of the laws of the State of Delaware, doing business at 1211 Avenue of the Americas, New York, N.Y., 10036 with operational facilities located at 100 East 132nd Street, Bronx, New York, engaged in the business of news reporting and printing.

15. At all times herein mentioned, Defendant, NYP employed more than fifteen (15) employees and is an "employer" within the meaning of § 292(5) of the NYSHRL and NYCHRL.

16. At all times relevant, Defendant, NEW YORK PRESSMEN'S UNION NUMBER 2 (hereinafter "Union"), is a Union, organized under and existing by virtue of the laws of the State of New York, doing business at 275 Seventh Avenue, Suite 1500, New York, N.Y., 10001.

## IV. FACTUAL INFORMATION

17. Plaintiffs repeat and reallege each and every allegation herein.

18. Defendant Union is the purported collective bargaining representative for employees that work in the pressroom at the NYP.

19. Defendant Union has a collective bargaining agreement (hereinafter "contract" or "CBA") with co-Defendant Post, which was ratified in 2001.

20. This contract between Defendants only specified two (2) classifications of employees who perform work in the pressroom, Journeymen (a.k.a. "Pressmen") and Junior Pressmen (a.k.a. "Juniors" or "Apprentices").

21. Journeymen have seniority over Apprentices, and therefore receive work assignments before any other employee.

22. Upon information and belief, a third classification of employee, existing only at the NYP, is that of Permit Journeymen. Permit Journeymen are Apprentices who are given a permit to work as Journeymen at the NYP, but do not have the status as full Journeyman.

23. Upon information and belief, Permit Journeymen have all the responsibilities as full Journeyman in their own shop, but do not have the official title of Journeymen.

24. Upon information and belief, currently, there are seven (7) Permit Journeyman at the NYP, three (3) of whom are minorities, including, but not limited to, Plaintiff, DANIEL PAULINO.

25. Upon information and belief, within the newspaper printing industry as a whole, there is no classification of a Permit Journeymen, and if an individual goes to work at another newspaper, they are recognized only as Apprentices.

26. Upon information and belief, this permit can be revoked at any time by Defendant NYP.

27. Upon information and belief, a fourth and final classification of laborer or worker is known as a "Casual."

28. A casual is a laborer or worker who is neither a Union member, nor an employee of Defendant NYP. Plaintiff EVA LEE is a Casual.

29. Upon information and belief, casuals are used by Defendant NYP to meet staffing needs when Pressmen, (either Apprentices or Journeymen) are unavailable to work.

30. Upon information and belief, once a casual attains the required number of shifts (currently 124 shifts within a specified six (6) month period), he/she is placed on a Shop Priority list and becomes a Union member. This Shop Priority List is specific to each newspaper within the Union.

31. Upon information and belief, as part of their job responsibilities, Foremen select individuals to fill openings, on a daily basis, arising from an employee's failure to appear at the NYP facility from a pool of persons identified as "shapers" or "casuals."

32. The shape is the term used for the location and process of being selected to work shifts when Union members are unavailable to work. This mostly consists of casuals,

including, but not limited to, Plaintiff EVA LEE who has yet to obtain her Union card in the pressroom.

33. Upon information and belief, in order to become a Manager/Foreman, you must first become a Journeyman.

34. Upon information and belief, all current Foremen in the NYP Pressroom are Male Caucasian.

35. If an individual satisfies the shift requirement, they become Apprentices, ("Junior Pressman") and become employees of Defendant NYP and members of Defendant Union.

36. Upon information and belief, as certain minority Plaintiffs began to approach eligibility for apprenticeship, Defendant Union changed the number of shifts required to be worked from 110 to 124 in order to prevent individuals, including, but not limited to the Plaintiffs herein, from attaining apprentice status.

37. Upon information and belief, at the time of the increase, the majority of individuals affected were minorities, including women, including, but not limited to Plaintiff LEE.

38. Each classification group is organized by a list, created and maintained by both Defendants.

39. The Shop Priority List is a list ranking individuals by seniority and therefore dictates preference and order of assignment and/or placement and is specific to each newspaper.

40. Upon information and belief, pursuant to the Revisions List, an individual needs 140 shifts to attain Journeyman status.

41. Pursuant to contract, a Union member becomes eligible to be employed as a Journeyman at the satisfactory conclusion of his or her term of Apprenticeship and provided he/she passes a test designed, and administered by the Union.

42. By contract, the minimum length of Apprentice service before elevation to Journeyman status is four (4) years.

43. Certain Plaintiffs, including, but not limited to, Plaintiff PAULINO, were advised they were eligible for Journeymen status after four (4) years of service.

44. Upon information and belief, once all Caucasians were elevated to full Journeyman, in or about late 2005 and early 2006, the list was frozen, so no more individuals, including some of the named Plaintiffs herein, would be elevated to Journeymen.

45. When an individual is placed on a seniority list, the Union establishes a date for that person, which is used to determine the order in which one becomes eligible to be advanced to Journeymen status.

46. The member's date or placement on the list is based, in part, upon the number of shifts worked by the individual when he/she was a casual, and then as an Apprentice.

47. The Joint Apprenticeship Committee, (a joint union-publisher committee established by the publisher's collective bargaining agreement with the Union), maintains a city-wide priority list of all members (Union-wide) which determines when an employee may be eligible for advancement to Journeymen status.

48. Upon information and belief, Defendant Union allowed Defendant NYP to create it's own Joint Apprenticeship Committee, comprised of Raymond Walsh (from Defendant NYP), and a representative of Defendant Union.

49. Upon information and belief, there are three (3) lists based upon "seniority," created and maintained by Defendant Union, Defendant NYP, or both.

50. All named Plaintiffs have been prevented from attaining higher positions in the company, such as full Journeymen, and/or the Union, despite completing the requirements necessary for the positions.

51. The 2000 Union By-Laws established the right of all Apprentices to become Journeymen after four (4) years.

52. The By-laws were amended in 2001 to permit the President of the Union to make Journeymen as he sees fit.

53. Since in or about January 2006, Defendants have used non-minority Journeymen from other newspapers to work at the Post, thereby depriving employees at the NYP of opportunities to work and gain seniority in their attempt to qualify for Journeymen status.

54. In or about May 2006, Defendants agreed, without a fully representative employee vote, to transfer fifteen (15) Journeymen from the Daily News to work on allegedly new "commercial work" at the NYP printing facility in the Bronx, pursuant to a "Commercial Paper Agreement" (hereinafter, "CPA").

55. Upon information and belief, Casuals are not eligible to vote because they are not Union members.

56. Upon information and belief, Juniors (Apprentices) are not eligible to vote on Journeyman issues.

57. Upon information and belief, Permit Journeymen are not eligible to vote on Journeyman issues, because they are only Permit Journeyman within Defendant NYP, and therefore, were not allowed to vote on Union-wide matters.

58. The Union prevented those who were directly affected by the transfer, specifically Plaintiffs who are members of Defendant Union to vote and approve the CPA.

59. Eleven (11) individuals were transferred to the Post pursuant to the CPA.

60. Upon information and belief, all but one of the transferees were Caucasian Males.

61. Upon information and belief, these eleven individuals had only been elevated to Journeyman status approximately six (6) months prior to the transfer in 2006, and upon information and belief, these individuals did not meet the necessary requirements to become a Journeymen.

62. Upon information and belief, Defendant NYP plans to transfer additional workers from the Daily News.

63. Upon information and belief, Defendants reserved their right to transfer the remaining individuals when they saw fit, rather than promote eligible individuals from their own newspaper.

64. Upon information and belief, once this transfer was effectuated, Defendants stopped making Journeymen again.

65. Upon information and belief, Defendants use different lists each time Journeymen need to be made depending on who was next on each list.

66. Upon information and belief, while this transfer affected both minorities and Caucasians eligible for Journeyman status, the transfer had a greater impact on the minorities, because upon information and belief, there is a greater percentage of minorities who were passed over in favor of these transferees.

67. Upon information and belief, Defendants altered this policy to ensure work for non-minority Journeymen by giving preferential treatment to the transferees and the Caucasians who were already made Journeymen.

68. Upon information and belief, the policy was changed to allow outside Pressmen who, upon information and belief, are 90% Caucasian, to work shifts which had previously been provided to Plaintiffs at the NYP.

69. Upon information and belief, the new policy stated that, if the number of Pressmen (Union members either Journeymen or Apprentices) available at any time was insufficient to meet the staffing needs of the employer, outside Pressmen from other newspapers are entitled to work in order of seniority.

70. Upon information and belief, historically, Apprentices with four (4) or more years of service filled the vacancies left open by Journeymen and then outside Journeymen filled the remaining open spots.

71. Upon information and belief, outside Journeymen have the preference ahead of Apprentices employed within Defendant NYP.

72. Upon information and belief, there are no female or African-American Journeymen in the NYP Pressroom.

73. Upon information and belief, there are no minority or woman Forepersons in the NYP Pressroom.

74. Upon information and belief, these transferees were placed ahead of all Permit Journeymen, all Juniors (Apprentices) and all Casuals who had worked at the NYP, in some instances for over eight (8) years.

75. Upon information and belief, in or about 1998, certain Plaintiffs began to work in Defendant NYP's Pressroom in the Bronx.

76. Upon information and belief, certain Plaintiffs were given assignments most non-minority employees did not wish to accept, including, but not limited to, OLIVIA WILSON, SHEREE WILSON, DESIREE WILSON and JEROME WATSON.

77. Upon information and belief, these assignments included cleaning the floor, dumping the garbage, changing the ink and retooling paper.

78. Upon information and belief, Plaintiffs were given these assignments by NYP Foremen who were all Caucasian.

79. Upon information and belief, Defendant NYP Foremen specifically chose non-minority employees over minority employees so they could meet the shift requirement in less time.

80. Upon information and belief, certain Plaintiffs began to work shifts due to vacancies left open by employees who either failed to appear for their shift or retired.

81. Upon information and belief, Defendant NYP had no choice but to hire minority and women casuals to complete the necessary work required to keep their business operational.

82. Upon information and belief, certain Plaintiffs, all except Plaintiff EVA LEE, met the shift requirements and eventually became employees and Union members.

83. Upon information and belief, certain Plaintiffs were then placed on a Seniority list at the NYP, called the Shop Priority List.

84. Upon information and belief, certain Plaintiffs were then concurrently placed on a Seniority list for the Union, called the Joint Apprenticeship Committee list.

85. Upon information and belief, there is a separate Joint Apprenticeship Committee list just for Defendant NYP.

86. Upon information and belief, the decision-makers at Defendant NYP and Defendant Union have used the wrong list in order to decide who is elevated to full Journeyman status.

87. Upon information and belief, in or about 2006, Defendants, pursuant to the CPA, transferred in numerous Journeymen from the Daily News to work ahead of all named Plaintiffs herein, thus depriving them of work opportunities.

88. Upon information and belief, individuals who were eligible to be elevated to full Journeyman status, including, but not limited to, Plaintiff Paulino, and the other Permit Journeymen, were passed over in favor of the transferred individuals from another newspaper.

89. The use of non-minority transferees disproportionately eliminated work opportunities including opportunities to work overtime, sixth shifts and other benefits at the NYP, preventing minorities and women from gaining the requisite experience to qualify as Journeymen, and be elevated to management positions, as well as preventing Casuals from obtaining the requisite number of shifts to join the Union and advance within the ranks of the industry.

90. In addition to the commercial work, the Journeymen transferees have been given priority over minorities and women at the NYP for work traditionally performed by NYP employees, overtime and sixth shifts, preference in vacation days off and sick days.

91. Upon information and belief, the majority of the transferees did not work on the "new" alleged "commercial" projects.

92. Upon information and belief, the "commercial" work, the reason for the transfers, has recently diminished and the transferees are no longer necessary.

93. Upon information and belief, Defendant NYP had the workforce in place, including Plaintiffs, to handle an alleged increase in work, yet Defendants transferred numerous male Caucasians from the Daily News instead of giving this work to Plaintiffs.

94. Upon information and belief, in order for an Apprentice to become eligible for Journeymen status, a candidate must pass a Union created and administered test.

95. Upon information and belief, the Union altered the testing and certification requirements and created a new computerized system, which, at a minimum, will take an Apprentice over two (2) years to complete in order to further impede the advancement of minorities and women to Journeymen status, including, but not limited to, Plaintiff PAULINO.

96. Upon information and belief, Defendant Union failed on numerous occasions to take up the grievances of certain Plaintiffs.

97. Upon information and belief, two (2) employees were fired for conduct which otherwise was not subject to termination, namely Plaintiffs WATSON and MALONE.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Title VII)

98. Plaintiffs repeat and reallege each and every allegation herein.

99. Defendants intentionally discriminated against Plaintiffs in the terms, conditions and privileges of employment, on the basis of race and national origin, in violation of Title

100. As a proximate result of Defendants' discrimination, Plaintiffs have suffered and

13

continue to suffer substantial loss of past and future earnings, bonuses, and other supplemental employment benefits.

101. As a further proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer loss of reputation, emotional and mental distress, personal humiliation and anguish, and other compensatory damages.

### SECOND CLAIM FOR RELIEF
### (New York Executive Law §296)

102. Plaintiffs repeat and reallege each and every allegation herein.

103. Defendants intentionally discriminated against Plaintiffs in the terms, conditions and privileges of employment, on the basis of race and national origin, in violation of NYSHRL.

104. As a proximate result of Defendants' discrimination, Plaintiffs have suffered and continue to suffer substantial loss of past and future earnings, bonuses, and other supplemental employment benefits.

105. As a further proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer loss of reputation, emotional and mental distress, humiliation and anguish, and other compensatory damages.

### THIRD CLAIM FOR RELIEF
### (New York City Administrative Code)

106. Plaintiffs repeat and reallege each and every allegation herein.

107. Defendants intentionally discriminated against Plaintiffs in the terms, conditions and privileges of employment, on the basis of race and national origin, in violation of NYCHRL.

108. As a proximate result of Defendants' discrimination, Plaintiffs have suffered and

continue to suffer substantial loss of past and future earnings, bonuses, and other supplemental employment benefits.

109. As a further proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer loss of reputation, emotional and mental distress, humiliation and anguish, and other compensatory damages.

## VI.   DEMAND FOR JURY TRIAL

110. Plaintiffs repeat and reallege each and every allegation contained herein.

111. Plaintiffs hereby demand a trial by jury.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiffs demands judgment:

   a. Declaring Defendants violated the aforementioned statutes;

   b. Declaring Defendants participated in a course of conduct, when taken as a whole, has a continuing negative effect on Plaintiffs, adversely affecting their employment rights;

   c. Declaring Defendants caused damages to Plaintiffs;

   d. Declaring Defendants acted in conscious and intentional disregard of Plaintiffs' rights;

   e. Awarding Plaintiffs compensatory damages, back pay, front pay and all benefits which they would have been afforded but for said discrimination in an amount to be determined at trial;

   f. Awarding punitive damages as to Plaintiffs' Federal Claim where appropriate under law;

   g. Awarding Plaintiffs pre-and post-judgment interest;

h. Awarding Plaintiffs reasonable attorneys' fees and the costs and disbursements of this action on the First and Third Causes of Action; and

i. For such other and further relief as may be just and proper.

Dated:  February 19, 2008
        Farmingdale, New York

Respectfully Submitted,

**FRANK & ASSOCIATES, P.C.**

*Jennifer L. DeVenuti*
Neil M. Frank (NF-0251)
Jennifer L. DeVenuti (JD-5778)
*Attorneys for Plaintiffs*
500 Bi-County Blvd., 112N
Farmingdale, New York 11735
(631) 756-0400
