UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
WILLY MALONE, JEROME WATSON, ROBERT
ABREU, DESIREE WILSON, EVA LEE, OLIVIA
WILSON, SHERRE WILSON, ANGEL HERNANDEZ,
NYTRICHA SMITH AND DANIEL PAULINO,   Case No. 07 CIV 9583 (LTS)

                                  Plaintiffs,   **ECF CASE**

          -against-

NEW YORK PRESSMEN'S UNION NUMBER 2 AND
NEWS CORP. AKA NYP HOLDINGS D/B/A THE NEW
YORK POST,

                                  Defendants.
-----------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNION'S MOTION TO DISMISS

**LEVY RATNER, P.C.**
Attorneys for Defendant Union
80 Eighth Avenue, 8th Floor
New York, New York 10011
(212) 627-8100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................... 1

REPLY ARGUMENT ................................................................................................................ 2

    1.    The Complaint Fails to Allege that White Males Similarly Situated to Plaintiffs Were Affected Differently by the 2006 Journeymen Transfers ..................... 2

    2.    Plaintiffs Erroneously Rely Upon the "Continuing Violation" Doctrine to Support the Timeliness of the Claims Based upon Events outside the Limitations Period ............................................................................................................... 5

    3.    The Claims of Alleged Discrimination in the Hiring of Casuals are untimely or otherwise barred as they relate to Plaintiffs ........................................... 6

    4.    Plaintiffs Do Not Address the Preclusive Effect of the Dispositions of Prior Litigations Alleging a Pattern and Practice of Unlawful Discrimination in the Post Pressroom ................................................................... 7

    5.    Plaintiffs' Allegations Concerning the Union's Conduct as their Bargaining Representative in Negotiating the Commercial Agreement or the Processing of Grievances Are Neither Timely nor Adequately Pleaded .................. 8

    6.    Plaintiffs Essentially Concede the Martin v. Curran Defense to the Non-Federal Claims ........................................................................................ 9

    7.    Plaintiffs Understate the Requirements of Notice Pleading ............................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abrams v. Baylor College of Medicine,*
    805 F.2d 528 (5th Cir. 1986) ................................................................................ 5

*Atlantic Corporation v Twombly,*
    127 S. Ct. 1955 (2007) ......................................................................................... 9

*DelCostello v. Teamsters,*
    462 U.S. 151 (1983) ............................................................................................. 8

*Domingo v. New England Fish Co.,*
    727 F.2d 1429 (9th Cir. 1982) ............................................................................. 5

*EEOC v. Kovacevich,*
    2007 WL. 1174444 (E.D. Cal. 2007) .................................................................. 5

*Graham v. Long Island RR,*
    230 F.3d 34 (2d Cir. 2000) ................................................................................... 2

*Ledbetter v. Goodyear Tire,*
    127 S. Ct. 2162 (2007) ..................................................................................... 5,6

*National Railroad P. Corp. v. Morgan,*
    536 U.S. 101 (2002) ......................................................................................... 5, 6

*Samuels v. Northern Telecom, Inc.,*
    942 F.2d 834 (2d Cir. 1991) ................................................................................. 8

*Transhorn, Ltd. v. United Techs. Corp.,*
    502 F.3d 47 (2d Cir. 2007) ................................................................................... 9

*Zimmerman v. Associate First Capital Corp,*
    251 F.3d 376 (2d Cir. 2001) ................................................................................. 4

**STATE CASES**

*Martin v. Curran,*
    303 N.Y. 276 (1983) ......................................................................................... 2, 9

**FEDERAL STATUTES**

42 U.S.C. § 2000e-2(h) ................................................................................................... 6

**OTHER**

Federal Rule of Civil Procedure, 20(a) ........................................................................... 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
WILLY MALONE, JEROME WATSON, ROBERT
ABREU, DESIREE WILSON, EVA LEE, OLIVIA
WILSON, SHERRE WILSON, ANGEL HERNANDEZ,
NYTRICHA SMITH AND DANIEL PAULINO,         Case No. 07 CIV 9583 (LTS)

                                   Plaintiffs,         **ECF CASE**

              -against-

NEW YORK PRESSMEN'S UNION NUMBER 2 AND
NEWS CORP. AKA NYP HOLDINGS D/B/A THE NEW
YORK POST,

                                   Defendants.
------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UNION'S MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendant Union submits this Reply Memorandum in further support of its Motion to Dismiss. In its initial Memorandum ("Union Mem.") the Union discussed various grounds for dismissing the Complaint, including, *inter alia*, the fact that the only allegation within the applicable limitations period (*i.e.*, the transfer of Journeymen to the New York Post (the "Post") in the Spring of 2006) failed to state a cause of action, and that the allegations of a pattern and practice of discrimination going back ten years were either time-barred or otherwise precluded by prior litigation.

In their Memorandum of Law in Opposition ("Opp. Mem.") Plaintiffs not only fail to rebut, but largely fail even to address, most of the arguments raised by the Union in support of its motion. For example:

- As to the 2006 Journeymen transfer, Plaintiffs not only ignore the cases cited by the Union holding that unlawful discrimination based upon disparate treatment or impact

must allege that the favored group outside the protected class are similarly situated, but readily concede that the similarly situated group affected by the transfers, all Post Junior Pressmen ("Post Juniors"), were mostly white males;

- As to the other allegations, Plaintiffs fail to meaningfully address or distinguish established precedents concerning (1) claims based on alleged conduct that occurred outside the limitations period, (2) claims that have already been the subject of resolved judicial actions involving the same parties, and/or (3) claims that are not specifically related in time or place to any of the named Plaintiffs.

- As to the non-federal claims, Plaintiffs concede the Union membership did not authorize the allegedly discriminatory conduct, without disputing that Martin v. Curran, 303 N.Y. 276 (1983) requires pleading such authorization.

Without repeating in detail the contentions previously made, these and other deficiencies in Plaintiffs' response are summarized in the ARGUMENT section below.

## REPLY ARGUMENT

1. **The Complaint Fails to Allege that White Males Similarly Situated to Plaintiffs Were Affected Differently by the 2006 Journeymen Transfers**

As noted in the Union's initial Memorandum, the only discriminatory conduct alleged to have occurred within the limitations period (*i.e.*, within the 300 day period prior to Plaintiff Malone's filing of his first EEOC charge) is the 2006 transfer of Journeymen to the Post.[1] Opp. Mem. at 12-13, 16. Plaintiffs assert that the transfers had an unlawful discriminatory impact on them and on other minorities. The Union cited cases holding that to infer discrimination in that context; a plaintiff must allege that the favored employees in the non-protected class are similarly situated. Union Mem. at 11-14. *See, e.g.*, Graham v. Long Island RR, 230 F.3d 34, 39 (2d Cir. 2000) (holding that to make out a prima facie case of discrimination under Title VII, plaintiffs alleging disparate treatment must show that "she was similarly situated in all material

---

[1] The first sentence of POINT V in the Opp. Mem. acknowledges the Union's claim that the Journeymen transfer is the only event alleged to have occurred within the 300-day limitations period, without disputing, this point. Rather as we show in point 2 below, Plaintiffs argue that the other claims, although outside the limitations period, are nonetheless actionable under their interpretation of the continuing violation doctrine.

respects to the individuals with whom she seeks to compare herself")(internal quotation marks omitted).

Plaintiffs do not even mention the cases cited by the Union. More importantly, Plaintiffs do not allege that they are similarly situated to the white male transferred Journeymen or that the similarly situated white males (the other Post Juniors) were affected differently by the transfer than they were. As to the former, Plaintiffs "concede the transferred individuals already had more seniority than the Junior Pressmen." Opp. Mem. at 12. They acknowledge the long standing seniority preference given Journeymen over all Junior Pressmen in filling Journeymen shifts. Amended Complaint at ¶¶ 19-20 ("Journeymen have seniority over Apprentices. As such [they] receive assignments and work over any other employee."); ¶ 71 ("[O]utside Journeymen have the preference ahead of employee Apprentices.").[2]

Plaintiffs also effectively concede that the similarly situated white males were affected in the same manner by the transfers. Plaintiffs acknowledge that the seniority preference afforded the transferred Journeymen applied to all the Post Juniors without regard to race, gender, ethnicity or other protected characteristic. Opp. Mem. at 13 ("the sixty-five (65) juniors and seven (7) Permit Journeymen [at the Post] have continued to be discriminated against [as a result of the transfers]."). *See also* Amended Complaint at ¶ 78 ("These transfers were placed ahead of all Permit Journeymen, all Juniors (Apprentices) ... who had worked at the [Post]"). Plaintiffs admit that a majority of the Permit Journeymen adversely affected were white males, noting that only three of the seven such Permit Journeymen were minorities. Opp. Mem. at 12. Thus, white males constitute a majority of the group that Plaintiffs allege were affected by the transfers.

---

[2] After the Union filed its Motion to Dismiss on December 21, 2007, Plaintiffs filed a First Amended Complaint ("Amended Complaint") on January 14, 2008. The Amended Complaint, not substantially different than the Initial Complaint, raises no new material allegations, though in some case allegations have been rearranged and renumbered. While in the Union's initial Memorandum of Law, filed before the Amended Complaint, the Union cited to the Initial Complaint, in the present Reply Memorandum citations are to the Amended Complaint.

Rather than explaining the logic of inferring discrimination from these facts, Plaintiffs selectively cite from discriminatory discharge cases in which an inference of discrimination could reasonably be drawn from an employer discharging an employee in a protected category, without apparent reason, and then hiring a replacement outside that class. For example, Plaintiffs cite Zimmerman v. Associate First Capital Corp, 251 F.3d 376, 381 (2d Cir. 2001), which held that in a discharge case replacing a female employee with a man was sufficient at the prima facie stage to raise an inference of discrimination, and to shift the burden of explanation to the employer. Opp. Mem. at 16. Zimmerman, and other similar cases cited by Plaintiffs, are inapposite. Plaintiffs do not allege that the transfers resulted in any of them losing their five shifts of work a week in their job classification. At best, the Complaint alleges that the Journeymen transfers reduced the availability of Journeymen shifts that all Post Juniors could work. Even if true, this reduced opportunity to work out of classification affected white male Junior Pressmen as well as Plaintiffs.

Plaintiffs err in applying, out of context, the phrase from Zimmerman that "the mere fact that the work positions are being filled by individuals outside Plaintiffs protected class [is] sufficient to establish the required inference." Opp. Mem. at 16. The "filling of work positions" here does not refer to an employee being fired and replaced, but to the assignment of work in accordance with what is concededly a long-standing preference given Journeymen, which affects all Post Juniors, including white male Juniors, who also may have had the opportunity to work more Journeymen shifts before the transfers than afterwards.

2.  **Plaintiffs Erroneously Rely Upon the "Continuing Violation" Doctrine to Support the Timeliness of the Claims Based upon Events outside the Limitations Period**

Aside from the 2006 Journeymen transfers, Plaintiffs do not assert that their claims are based on events that occurred within the limitations period. *Compare* Union Mem. at 10-11 *with* first sentence of POINT V of the Opp. Mem. at 8.[3] Rather, Plaintiffs contend their claims are timely because they are part of a continuing violation, whether or not any actionable conduct occurred within the limitations period. Opp. Mem. at 8-11. Plaintiffs' misreading of the applicable legal precedent is best illustrated by their reliance on the following quotation from a Fifth Circuit Court of Appeals opinion:

> "...if the mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to conceive of a circumstance in which plaintiff's claim of an unlawful employment policy could be untimely."

Abrams v. Baylor College of Medicine, 805 F.2d 528, 533 (5th Cir. 1986). Opp. Mem. at 9-10. The Abrams Court was not adopting the view Plaintiffs assert here, but rather explaining why such a construction would effectively negate Supreme Court precedent concerning the timeliness of Title VII claims. Id. (" to establish a continuing violation, a plaintiff must show some application of the illegal policy to him (or to his class) within the 180 days preceding the filing of his complaint.").[4]

---

[3] While this sentence repeats the Union's assertion that the transfers were the only events to occur within the limitations period, what is telling is that Plaintiffs, rather than dispute this fact, proceed to argue, erroneously that this fact does not bar claims that they admit arose outside of the limitations period.

[4] Plaintiffs also cite Domingo v. New England Fish Co., 727 F.2d 1429 (9th Cir. 1982) for a proposition that the Court explicitly rejected. Compare Opp. Mem. at 9 with the Court's opinion at 1442-1443 ("[A]s a prerequisite for obtaining relief, each class member must demonstrate . . . that he or she has been discriminated against during the limitations period or was a member of a group exposed to discrimination during that time."). Similarly, far from endorsing Plaintiffs' serial violation theory, the Court in EEOC v. Kovacevich, 2007 WL 1174444 (E.D. Cal. 2007) acknowledged that theory was rejected by the Supreme Court in National Railroad P. Corp. v. Morgan, 536 U.S. 101 (2002).

The Supreme Court recently reaffirmed the basic rule that a Title VII claim a plaintiff must show that there was an actionable act of discrimination *within the limitations period.* Ledbetter v. Goodyear Tire, 127 S. Ct. 2162 (2007)   Plaintiffs assert Ledbetter is inapplicable because it was decided after Plaintiff Malone filed his EEOC complaint, and because it involved an Equal Pay Act claim  Opp. Mem. at 8.  Even if these were distinguishing considerations, and they are not, Plaintiffs ignore the fact that Ledbetter did not break new ground as to the rules governing the timeliness of Title VII claims based upon adverse employment actions.[5]  Ledbetter merely reiterated the established principle that subsequent non-discriminatory acts that entail adverse effects from what was arguably past discrimination do not trigger a new limitations period.  Ledbetter at 2169.  This rule has long been applied to the effects of past discrimination upon the operation of a collectively bargained seniority system (*see* discussion and cases cited at Union Mem. at 10-11) and the application of Section 703(h) of Title VII, 42 U.S.C. § 2000e-2(h). Union Mem. at 13-14.

### 3. The Claims of Alleged Discrimination in the Hiring of Casuals are untimely or otherwise barred as they relate to Plaintiffs

In its moving brief the Union contended that any discrimination experienced by Plaintiffs when they were Casuals was outside the limitations period, and that Plaintiffs lack standing to assert claims on behalf of other individuals who are not parties to the present action.  Union Mem. at 11 and n11.

---

[5] Five years earlier the Court repeated the familiar summary of the requirement that there be a discrete act within the limitations period:

> "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.  [Plaintiff] can only file a charge of discrimination to cover discrete acts that occurred within the appropriate time period."

National Railroad P. Corp. v. Morgan, 536 U.S. 101, 114 (2002).

Plaintiffs do not appear to allege, with the possible exception of Plaintiff Lee, that the events relating to their hiring as Casuals took place within the limitations period. Plaintiff Lee's allegations of discrimination in her being hired as casual were the subject of a separate Complaint in this Court which Plaintiff Lee withdrew with prejudice on March 8, 2008 in response to the Post's motion for summary judgment. *See* Docket entries numbered 1 (the Complaint filed July 17, 2007) and 14 (Stipulation and Order of Dismissal with Prejudice dated February 8, 2008) in Case No 07 Civ. 6475 (JSR).

Plaintiffs do not allege when and how any of the named Plaintiffs, including Lee, were discriminated against as Casuals such that a timely claim could plausibly be inferred.[6] Plaintiffs' appear to respond to this deficiency by asserting that other Casuals, not named as plaintiffs in the Amended Complaint, could join this action pursuant to Rule 20(a) of the Federal Rules of Civil Procedure. Opp. Mem. at 6-8. Whether or not this is an accurate statement of federal law is an issue that need not be addressed as no such Casuals have come forward.

4. **Plaintiffs Do Not Address the Preclusive Effect of the Dispositions of Prior Litigations Alleging a Pattern and Practice of Unlawful Discrimination in the Post Pressroom**

"Plaintiffs do not dispute, no fewer than six (6) of the within Plaintiffs have filed separate actions alleging the same or similar pattern-or-practice of discrimination with the Union and the New York Post." Opp. Mem. at 12. Plaintiffs Olivia Wilson, Desiree Wilson, Sheree Wilson and Jerome Watson brought a discrimination action against the Union which, after the Union filed a motion to dismiss, they withdrew **with prejudice** as reflected in an order dated March 13, 2006. *See* Union Mem. at 2 n. 2. Plaintiff Daniel Paulino brought two prior discrimination lawsuits

---

[6] For example, Plaintiffs allege that increasing the threshold for entering the regular workforce from 110 to 124 shifts had an adverse impact on minorities and women. *See* Amended Complaint at ¶¶ 35, 115-116. Yet, the only named Plaintiff who even arguably could have been affected by changing of the threshold is Plaintiff Lee. However, not only is there no allegation that Plaintiff Lee ever even came close to working 110 shifts in any six month period, but Plaintiff Lee withdrew with prejudice on February 8, 2008 any claim that she was discriminated against as a Casual. Compare Lee Complaint with Stipulation and Order of dismissal referred to, supra at page 7.

against the Defendant Union which alleged a discriminatory impact and implementation of the industry seniority system at issue here. The first case was withdrawn and the second case was dismissed on a summary motion by this Court, per the Honorable George B Daniels, and is now pending before the Second Circuit Court of Appeals. Id. See also, Opinion, attached as Exhibit A to the Union Mem. As noted above, on February 8, 2008, Lee withdrew with prejudice her claims that she had been discriminated against as a Casual.

Plaintiffs make no attempt to address the Union's argument that these prior litigations preclude the re-litigation of claims that were brought, or could have been brought, in those other litigations. See, cases cited by Union at Union Mem. n. 2; See also, Samuels v. Northern Telecom, Inc., 942 F.2d 834, 836 (2d Cir. 1991) (discussing preclusive effect of withdrawal with prejudice on subsequent Title VII action). Plaintiffs' sole response, that they would like their day in court (Opp. Memo at 12) ironically fails to acknowledge they already have had that opportunity.

5. **Plaintiffs' Allegations Concerning the Union's Conduct as their Bargaining Representative in Negotiating the Commercial Agreement or the Processing of Grievances Are Neither Timely nor Adequately Pleaded**

Under the guise of a Title VII claim Plaintiffs allege what are essentially claims that the Union breached its duty of fair representation. See, e.g., Amended Complaint at ¶¶ 108, 126-127. In its moving brief the Union showed that the Complaint did not contain the necessary allegations to support such a claim. Union Mem. at 14 n. 12. Plaintiffs do not address this issue, no less demonstrate that the alleged breaches of the duty took place within the six month limitation period applicable to such claims. DelCostello v. Teamsters, 462 U.S. 151, 172 (1983). The Commercial Agreement and the consequent transfer of Journeymen took place in the Spring of 2006; the Complaint was filed on October 26, 2007.

6.  **Plaintiffs Essentially Concede the <u>Martin v. Curran</u> Defense to the Non-Federal Claims**

The Union showed that the non-Federal Claims were insufficient as they did not meet the pleading requirements established by <u>Martin v. Curran</u>, 303 N.Y. 276, 279 (1983) for claims against unincorporated associations - that the allegedly unlawful conduct was authorized by the entire membership. Union Mem. at 15. Plaintiffs do not dispute, or attempt to distinguish, this legal principle. To the contrary, Plaintiffs concede that "it is highly unlikely the Union members would have ratified [the Commercial Agreement]." Opp. Mem. at 13.

7.  **Plaintiffs Understate the Requirements of Notice Pleading**

Vague and generalized pleadings are no substitute for alleging "enough facts to 'nudge [Plaintiffs'] claims across the line from conceivable to plausible.'" <u>Transhorn, Ltd. v. United Techs. Corp.</u>, 502 F.3d 47, 50 (2d Cir. 2007) (quoting from the Supreme Court decision in <u>Atlantic Corporation v Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (clarifying the standard under Rule 12 (b) (6)). *See also* Union Mem. at 12.

Plaintiffs' contention that they need discovery in order to allege with specificity how and when the individual named Plaintiffs were adversely affected (Opp. Mem. at 1, 13) is belied by the absence of allegations concerning matters clearly within the knowledge of Plaintiffs[7] and their counsel.[8] Most telling is Plaintiffs' alleged need to take "testimony as to what they [Plaintiffs themselves] experienced . . .". Opp. Mem. at 12. No explanation is offered as to why

---

[7] The allegation concerning the termination of two minority employees (Amended Complaint at ¶ 131) presumably refers to Plaintiff Watson and Plaintiff Malone. Plaintiff Watson was discharged prior to his withdrawal of all of his claims against the Union  According to Jerome Watson's Affidavit in case no. 05 Civ 10355 (Docket Entry 35), Watson was terminated in 2004, more than a year before he withdrew his claims against the Union. (Docket Entry 11 dated 3/13/2006). There is not, nor could there be, any allegation that Plaintiff Malone raised his termination in his EEOC charge.

[8] As Judge Daniels observed in the Paulino case, Plaintiffs' counsel had access to all the information necessary to demonstrate whether there was even an issue of fact as to the claimed manipulation of the rankings. See Decision, Exhibit A to Union Memo, at 5-9.

such information is not already available to Plaintiffs and their counsel, or why, despite access to this information, information revealed in prior litigation, and information otherwise distributed to Plaintiffs, Plaintiffs have been unable to allege specific instances of the discrimination they experienced.

## CONCLUSION

Based upon the foregoing and for the reasons set forth in Union's opening papers, Defendant Union respectfully requests that the Court enter an Order Dismissing the Complaint and granting such other and further relief as the Court deems appropriate.

Dated: New York, New York
March 12, 2008

By: *Daniel Engelstein*
Daniel Engelstein (DE-2499)
LEVY RATNER, P.C.
80 Eighth Avenue
New York, New York 10011
(212) 627-8100
(212) 627-8182 (fax)
Attorneys for Defendant
NEW YORK PRESSMEN'S
UNION NUMBER 2

On the Brief:

Daniel Engelstein
Carl J. Levine