UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
WILLY MALONE, JEROME WATSON, ROBERT
ABREU, DESIREE WILSON, EVA LEE, OLIVIA
WILSON, SHERRE WILSON, ANGEL HERNANDEZ,
NYTRICHA SMITH AND DANIEL PAULINO,

                                                  Plaintiffs,

-against-

NEW YORK PRESSMEN'S UNION NUMBER 2 AND
NEWS CORP AKA NYP HOLDINGS D/B/A THE NEW
YORK POST,

                                                  Defendants.
------------------------------------------------------------------------X

**DECLARATION OF DANIEL ENGELSTEIN**

Case No. 07 CIV 9583 (LTS)

**ECF CASE**

**DECLARATION OF DANIEL ENGELSTEIN IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

      DANIEL ENGELSTEIN, pursuant to 28 U.S.C. § 1746, hereby declares:

      1.    I am a principal in the firm Levy Ratner, P.C., attorneys for New York Newspaper Pressmen's Union Number 2 ("Defendant Union" or "Union"). This declaration is submitted in opposition to Plaintiffs' motion for leave to amend the Complaint.

      2.    The Declaration addresses two subjects. First it provides a summary of the procedural background. Second, it illustrates some of the reasons that the motion to amend should be denied because the proposed amended complaint has the same fatal legal deficiencies of the prior versions, notwithstanding Plaintiffs' opportunities to revise the complaint to provide notice of any timely and viable claim.

**Procedural Background**

3. The original Complaint (the "Initial Complaint") was filed on October 26, 2007.

4. Defendant Union served and filed its Motion to Dismiss the Complaint on December 20, 2007.

5. Prior to filing the Motion to Dismiss, I called, spoke with, and wrote to counsel for the Plaintiffs concerning the inadequacies of the Initial Complaint, including its lack of specificity, factual inaccuracies, and failure to state a claim. In addition to complying with Rule ¶ 2.B of the applicable Individual Practice Rules, which requires informal efforts to resolve issues before the filing of a motion, we did not want to have to file a motion to dismiss if Plaintiffs intended to file an amended complaint that would require a second motion.

6. Unfortunately, we did not receive any response to our communications. Attached as Exhibit "A" to this Declaration is the letter dated December 20, 2007 to counsel for Plaintiffs summarizing some of the communications and reiterating the inadequacies of the Complaint.

7. After the Motion to Dismiss was filed, Plaintiffs' counsel sought additional time in which to respond to which we agreed. The initial extension of time was from January 2, 2008 to February 11, 2008. *See*, Letter dated January 10, 2008, from Jennifer L. DeVenuti to the Court (Docket Entry No. 11).

8. We were also informed that five of the Plaintiffs were withdrawing from the lawsuit: Sammy Ng, Eric Brockington, Robert Abreu, Angel Hernandez and Marco Gonzalez.

9. Before the extended deadline, Plaintiffs filed an Amended Complaint dated January 23, 2008, which was entered on January 31, 2008. *See*, Docket Entry No. 13.

10. Although Plaintiffs had the benefit of Defendant Union's motion papers detailing the legal deficiencies of the Initial Complaint, the Amended Complaint was not materially different.

11. Shortly thereafter, we consented to the request of Plaintiffs' counsel to further extend the deadline to oppose the Motion to Dismiss from February 11, 2008 to February 19, 2008. *See*, Docket Entry No. 14.

12. On or about February 19, 2008, Plaintiffs filed their papers in opposition to the Motion to Dismiss. They also filed a cross-motion to file a Second Amended Complaint, a draft of which was attached as Exhibit B to the supporting Declaration of Jennifer L. Devenuti dated February 19, 2008.

13. The Proposed Second Amended Complaint omitted some of the allegations contained in the First Amended Complaint, and added others. Like the Initial Complaint, however, the Proposed Second Amended Complaint was comprised of general allegations that did not provide sufficient notice to the Defendant Union as to the adverse employment actions and effects being alleged as to each named Plaintiff, the date on which those actions took place, or facts from which it could be inferred, even assuming that any such an action took place within the limitations period, that similarly situated white males were treated more favorably than Plaintiffs.

14. The Proposed Second Amended Complaint failed to contain even such basic information as the employment history of each of the named Plaintiffs, which of the alleged adverse employment actions applied to them and how, or when they were so affected.

15. On or about February 26, 2008, the Court issued an order terminating the cross-motion to amend the complaint due to Plaintiffs' failure to comply with Rule 2.B of the Individual Practice Rules.

16. On or about February 27, 2008, the Court granted Defendant Union's request, with Plaintiffs' consent, that the following schedule be adopted with respect to Plaintiffs' Motion to Amend the Complaint, and the completion of the Union's Motion to Dismiss:

(a) Defendant Union would provide Plaintiffs with the information it submitted to the EEOC in order to enable Plaintiffs to focus the allegations in their amended complaint, particularly as to essential allegations concerning when events took place, the adverse effects on the named Plaintiffs resulting from these actions, and the allegedly disparate treatment of similarly situated white males.

(b) Plaintiffs would provide Defendant Union with a revised Second Amended Complaint by Monday, March 5, 2008;

(c) On March 10, 2008, the Union would inform Plaintiffs if it consented to the filing of the revised Second Amended Complaint. If, in the Union's view, the revised Second Amended Complaint contained allegations which materially mooted the legal basis for the Union's pending Motion to Dismiss, the Union would consent to the filing of the revised Second Amended Complaint, and either answer that complaint or file a new motion to dismiss. If the Union believed that the revised Proposed Second Amended Complaint did not materially moot the pending Motion to Dismiss, the Union would oppose the Motion for Leave to File an Amended Complaint, and submit its reply papers on the Motion to Dismiss, as well as its opposition to the Motion to Amend.

17. As agreed, the Union emailed Plaintiffs' counsel the information that it had submitted to the EEOC during the investigation of the underlying complaint. Attached to this Declaration as Exhibit "B" is a copy of the information transmitted by the Union.

18. After receiving the revised Second Amended Complaint, the Union sent a further communication explaining why the revised complaint did not moot the pending Motion to Dismiss, and offered Plaintiffs a further opportunity to propose revisions to their complaint. Attached to this Declaration as Exhibit "C" is a copy of the March 7, 2008 letter to Plaintiffs' counsel illustrating why the revised Second Amended Complaint did not moot the pending Motion to Dismiss.

19. By email dated March 10, 2008, Plaintiffs' counsel informed us that they were not prepared to make any further revisions.

20. By letter dated March 10, 2008, the Union informed Plaintiffs' counsel that it did not consent to the revised Second Amended Complaint, and, on March 12, 2008, filed its reply memorandum in support of its Motion to Dismiss.

21. At that point, Plaintiffs had two options. The first was to reinstate their earlier motion based upon the Proposed Amended Complaint attached to the February 19, 2008 DeVenuti Declaration. The second was to file a new motion for leave to amend the Complaint presumably based upon the revised version sent to the Union on March 5, 2008 (see paragraph numbered above).

22. Plaintiffs chose to reinstate the earlier motion, a request that the Court granted on or about March 14, 2008.

23. Thus, the present motion addresses Plaintiffs' request for leave to file the Proposed Second Amended Complaint, dated February 19, 2008; not involve the revised version provided the Union on March 5, 2008.

24. The Union's time to file its opposition to the Motion for Leave to File an Amended Complaint was extended to April 4, 2008.

**The Motion to Amend Should Not Be Granted As the Proposed Amended Complaint is insufficient as a matter of law for the reasons set forth in the Motion to Dismiss**

25. As the accompanying Memorandum in Opposition argues, the Motion to Amend should not be granted or, in the alternative, if granted, the Second Amended Complaint should be dismissed, for all of the reasons stated in the initial Motion to Dismiss. As briefly illustrated by the examples discussed below and in the accompanying memorandum, the Proposed Second Amended Complaint does not contain allegations that materially affect the legal basis for dismissing the Complaint.

**The Claims are Untimely and/or Only Address
the Current Impact of Alleged Past Discrimination**

26. Notwithstanding the Union's contentions concerning the untimely nature of most of the allegations, the Proposed Second Amended Complaint does not contain additional information concerning the nature of the adverse actions alleged or the dates on which these actions occurred, from which it could be inferred that the claims, other than those based upon the 2006 transfers, were timely.

27. For example, as was the case with the earlier versions of the Complaint, the allegations concerning the affect of discrimination during the period that plaintiffs were working as casuals on their placement on the seniority list are well outside any conceivable limitations period.

28.     Plaintiffs concede that any discrimination in the hiring of casuals preceded the date on which they became Junior Pressmen.  The following Plaintiffs ceased working as Casuals and became Junior Union members as of the dates set forth below:

| Plaintiff | Effective Date |
|---|---|
| Daniel Paulino | 1/1/2000 |
| Robert Abreu | 1/1/2001 |
| Desiree Wilson | 1/1/2002 |
| Jerome Watson | 9/1/2001 |
| Sammy Ng | 1/1/2002 |
| Olivia Wilson | 7/1/2002 |
| Sheree Wilson | 7/1/2002 |
| William Malone | 1/1/2003 |
| Nytricha Smith | 1/1/2003 |

29.     Thus, as set forth in the Motion to Dismiss, to the extent the Proposed Second Amended Complaint alleges that Plaintiffs were discriminated against in their capacity as Casuals, or in their attempt to get work as Casuals, any such discrimination would have occurred prior to their becoming Junior Pressmen, and thus would have occurred more than three years prior to the filing of the lawsuit.

30.     As to the one named Plaintiff who did not become a Junior Pressmen or a member of the Union, Eva Lee, the Proposed Amended Complaint fails to allege any facts from which it could be inferred that the Union engaged in any conduct that adversely affected her, no less were unlawfully motivated.  Indeed, any claim that she was prevented from becoming a Junior Pressmen as a result of discrimination in hiring as a casual is precluded by her withdrawal with prejudice in a separate action precisely those claims.

31.     Although the various complaints allege that the Union increased the threshold number of shifts necessary to become a Junior Pressmen, none of the complaints allege that Plaintiff Lee had met the lower threshold or other facts from which it could be inferred that she was otherwise impacted by that change.

**The Allegedly Discriminatory Impact of the Journeymen Transfers**

32. The Proposed Second Amended Complaint, like the earlier versions of the Complaint, alleges that the 2006 Journeymen transfers affected all Post Junior Pressmen.

33. The Proposed Second Amended Complaint does not state, and could not legitimately state, that those similarly situated Post Junior Pressmen affected by these transfers were predominated minorities and/or women. In fact, as the information provided Plaintiffs' counsel shows, a majority of the adversely affected group were white males, thus belying any plausible basis for inferring unlawful disparate impact. The spreadsheet showing the demographic breakdown of the Post Junior group is attached separately hereto as Exhibit "D."

**The Failure to Make the Allegations Required by <u>Martin v. Curran</u>**

34. With respect to the non-federal claims, although Plaintiffs had the benefit of the Union's motion papers, they failed to make the allegations necessary to state a claim against the Union, an unincorporated association. Indeed, they specifically alleged that the conduct within the limitations period was not authorized by the Union membership as required by the relevant authority as a pre-requisite for stating a viable claim.

**Issue Preclusion Based Upon Prior and Pending Litigation**

35. Although Plaintiffs' memorandum in opposition to the Union's motion to dismiss acknowledge that some of the named Plaintiffs filed prior lawsuits, and subsequently withdrew their claims with prejudice, the Proposed Second Amended Complaint does not provide any specific allegations from which it can be inferred, as to each of those named Plaintiffs, that any specific injury suffered by them was a result of conduct by the Union that took place after the date on which the claims against the Union were withdrawn with prejudice.

36. The Proposed Second Amended Complaint contains no allegations from which it could be reasonably inferred that the seniority system by which Junior Pressmen are made Journeymen was manipulated with discriminatory intent. As this Court previously found, in its Memorandum and Order dated May 7, 2007, ("the Decision") in <u>Paulino v. New York Printing Pressmen's Union Local Two et al.</u>, 06 Civ. 00053, the neutral seniority system by which Junior Pressmen are made Journeymen has been in all material respects substantially the same for decades and the specific allegations of discriminatory manipulation were unfounded.

37. The Proposed Second Amended Complaint, unlike the unsuccessful Paulino case, does not contain any specific allegations concerning manipulation of the seniority lists as to any of named Plaintiffs, no less provide a basis from which the Court could conclude that conduct occurred within the limitations period, or during a period after the withdrawal of claims with prejudice against the Union.

38. The Proposed Second Amended Complaint is so vague and irresponsible that it continues to allege that the discharge of two of the named Plaintiffs, one of whom is Jerome Watson. Watson, however, was discharged for cause on or about July 7, 2004. As noted to Plaintiffs in our March 7, 2008 letter, attached hereto as Exhibit "C", any claim related to Watson's discharge is precluded by the dismissal of his earlier action against the Union, with prejudice, on March 13, 2006.

39. These are only examples of Plaintiffs' failure to provide even the barest minimum notice of how and when the Union purportedly discriminated against them, no less the specific nature of the adverse employment action that is alleged here. The documents provided to Plaintiffs included an agreement which guaranteed the Post Juniors, including Plaintiffs here, five shifts of work a week. The Proposed Second Amended Complaint does not allege or

acknowledge that they were afforded the contractual opportunity to work the five shifts a week. Similarly, the Proposed Second Amended Complaint does not take into account that, as a result of the industry-wide seniority system which Plaintiffs attack here, Plaintiffs have been afforded the opportunity to work extra shifts at other newspapers, increasing their earning power.

I declare under penalty of perjury that the foregoing is true and correct, except as to those matters I believe to be true and correct upon information and belief, and then I believe them to be true.

Dated: New York, New York
April 3, 2008

/s/
DANIEL ENGELSTEIN