**EXHIBIT C**

# LEVY RATNER, P.C.
Attorneys at Law
80 Eighth Avenue
New York, New York 10011-5126

Telephone (212) 627-8100
Telecopier (212) 627-8182

Richard A. Levy
Daniel J. Ratner
Daniel Engelstein°
Gwynne A. Wilcox*
Pamela Jeffrey
Owen M. Rumelt*
Kevin Finnegan
Carl J. Levine
David Slutsky^
Allyson L. Belovin
Suzanne Hepner*

Ezekiel D. Carder°
Dana E. Lossia▼
Sara D. Newman*
Susan J. Cameron^
Micah Wissinger*

Senior Counsel:
Richard Dorn
Jennifer J. Middleton*
Paul Schachter°
Denise Reinhardt*

Counsel:
Anthony DiCaprio
Michael Steven Smith
David P. Horowitz†



March 7, 2008

**BY FACSIMILE AND
FIRST-CLASS MAIL**

Jennifer L. DeVenuti, Esq.
Frank & Associates, P.C.
500 Bi-Country Boulevard, Suite 112N
Farmingdale, New York 11735

    Re:    Malone et. al v. NY Pressmen's Union Number 2
             Case No. 07 Civ 9583 (LTS)

Dear Jennifer,

      We are writing with respect to the consultation requirement of Rule 2(B) in response to the Proposed Second Amended Complaint you sent us Wednesday afternoon. As previously discussed, unless the Proposed Second Amended Complaint is sufficiently materially different so as to essentially moot the pending motion to dismiss, it makes no sense for the Union to agree to the amendment.

      As you are aware from the Union's motion to dismiss, among the deficiencies in the Complaint were the general lack of specificity as to when events took place and how each of the named Plaintiffs were allegedly affected. We also explained our view that, to be viable, the Complaint needed to allege how and when similarly situated white males were treated differently. To assist Plaintiffs in correcting, or at the very least, refining the allegations in the initial and first amended complaint, we provided you, in addition to the motion to dismiss and our previous correspondence, with copies of certain documents the Union submitted during the course of the EEOC investigation, and referred you to the dockets and decisions of the cases brought by some of the named Plaintiffs.

      Nonetheless, the Proposed Second Amended Complaint still appears to have the same legal and factual deficiencies as the initial complaint, raised by the Union in its motion. The following illustrates some of them:

LEVY RATNER, P.C.

Jennifer L. DeVenuti, Esq.
March 7, 2008
Page 2

1. <u>The Transfer Related Allegations</u>

The Proposed Second Amended Complaint does not provide adequate factual allegations from which it could be inferred, as required by law, that similarly situated white males (i.e., Post Junior Pressmen) were treated more favorably or were affected differently by the transfer of journeymen. Paragraph 69 alleges that although "this transfer affected both minorities and Caucasian Juniors eligible for Journeymen status, the transfer had a greater impact on the minorities, because upon information and belief, there is a greater percentage of minorities who were passed over in favor of these transferees." Plaintiffs thus appear to concede in the first part of that sentence that Post Junior Pressmen were equally affected by the transfers. The attempt to create the appearance of disparate impact, "there is a greater percentage of minorities who were passed over in favor of these transferees," does not give us notice as to the bases of Plaintiffs' claim. It is undisputed that white males constitute a majority of the group affected by the transferees, the Post Juniors. This fact is within the knowledge of Plaintiffs, was revealed to your firm in the Paulino litigation, and is summarized in the spreadsheet we provided you last week that had been previously submitted to the EEOC.

2. <u>The Allegations that the Named Plaintiffs were somehow discriminatorily prevented from becoming Journeymen.</u>

Plaintiffs do not appear to dispute any of the following:

- That Juniors become Journeymen based upon their rank on the Union wide Revisions List;

- The Revisions List date which determines placement on the Revisions List is initially set when individuals become Junior Pressmen and is not adjusted unless an individual works less than a set minimum threshold of shifts in any six month measuring period;

- All the named Plaintiffs who are Juniors are guaranteed five shifts a week of work at the Post which would be more than sufficient to maintain their Revisions List date;

- Any discrimination by the Post in the hiring of Casuals such as would have affected the initial Revisions List date of any of the named Plaintiffs took place by definition before they became Junior Pressmen, which in every instance was more than three years before the complaint was filed.[1]

---

[1] Presumably Plaintiffs could confirm the following dates on which they became Junior Pressmen:

| Plaintiff | Effective Date |
|---|---|
| Daniel Paulino | 1/1/2000 |
| Robert Abreu | 1/1/2001 |
| Desiree Wilson | 1/1/2002 |
| Jerome Watson | 9/1/2001 |
| Sammy Ng | 1/1/2002 |

LEVY RATNER, P.C.

Jennifer L. DeVenuti, Esq.
March 7, 2008
Page 3

    There is no allegation that any specific named Plaintiff was discriminated against, after becoming Junior Pressmen, with respect to their Revisions List date, no less for an unlawful reason. Plaintiff Paulino's claim in that regard was specifically rejected by Judge Daniels. Moreover, in addition to the Revisions List we sent you last week (which was posted and available to all Plaintiffs) your firm had access in the Paulino case to historical information concerning the Revisions List and the calculation of the Revisions List date.

    Yet, despite the availability of that information, this Proposed Second Amended Complaint does contain a single specific example of any Junior being made a Journeymen out of turn or that somehow that the mechanical seniority system described in Judge Daniel's decision as having been in place for 50 years was manipulated to the detriment of any named Plaintiff (no less in a manner that favored white males). The Proposed Second Amended Complaint does not provide any notice as to which, if any, named Plaintiff's order on the Revisions List was adversely changed and when.

    Allegations such as those in Paragraph 58 that the named Plaintiffs have been prevented from becoming full Journeymen do not provide notice of any claim given the undisputed fact that Junior Pressmen are made Journeymen in their order on the Revisions List and the absence of any allegation that a particular named plaintiff was passed over on the Revisions List by any Junior Pressmen, no less passed over under circumstances from which unlawful discrimination could be plausibly be inferred.

3.    <u>Allegations which Plaintiffs or their counsel should know are incorrect.</u>

    The documents in your possession and/or facts within the knowledge of Plaintiffs or Plaintiffs' counsel are such that there is no colorable basis for many of the allegations in the Proposed Second Amended Complaint. For example

- Plaintiff Eva Lee was never a member of the Union, as incorrectly alleged in paragraphs 14 and 15;

- The change, which became effective as of December 31, 2006, in the threshold shift requirement to become a Junior Pressmen did not affect Plaintiff Lee becoming a Junior Pressmen. The Proposed Amended Complaint does not allege that she met the 110 shift threshold at any time after the change was implemented.

| | |
|---|---|
| Olivia Wilson | 7/1/2002 |
| Sheree Wilson | 7/1/2002 |
| William Malone | 1/1/2003 |
| Nytricha Smith | 1/1/2003 |

{Worldox Files\876\001\03\08005027.DOC}

LEVY RATNER, P.C.

Jennifer L. DeVenuti, Esq.
March 7, 2008
Page 4

- As your firm well knows from the Paulino litigation the allegation in paragraph 48 is totally inaccurate as well as inconsistent with other paragraphs in the Proposed Second Amended Complaint describing the Revisions List.

- The allegation is paragraph 52 that all Caucasians were elevated to full Journeymen in or about 2005 and early 2006 is ludicrous given the knowledge that your firm has with respect to the scores of Caucasians who are Junior Pressmen and are waiting their turn to become full Journeymen. As the document provided to you last week shows there were more than 35 white males on the Post Junior List alone. Moreover, there is no basis for your allegation that the Revisions List was frozen.

- The allegation in paragraph 66 is directly contradicted by the records provided to you last week and could have been confirmed by your Plaintiffs. The Journeymen transferred were not all elevated to Journeymen status within the six month period prior to the transfer.

The names and dates that the eleven Pressmen who transferred became Journeymen are listed below:

| Name | Month and Year Became Journeyman |
|---|---|
| Edward Kennedy | December, 2001 |
| Kevin Benedicks | December, 2002 |
| Daniel Delaney, Jr. | April, 2003 |
| John Rigali | March, 2004 |
| Brian Santos | June, 2004 |
| Roy Hearfield | January, 2005 |
| Frank Martino | January, 2005 |
| James Lyon | January, 2005 |
| Erik Atlas | January, 2005 |
| Anthony Faulisi | July, 2005 |
| Michael Meyerson | November, 2005 |

4. **Plaintiff Malone's claim of changed work assignments.**

It is not clear what responsibility the Union has for the conduct alleged with respect to Plaintiff Malone's work assignments. There are no allegations that the Union was asked to take any action with respect to any alleged violation of the contract. There are no allegations that the work is not also performed by white male Junior Pressmen or that work assignments constitute a material adverse employment action.

{Worldox Files\876\001\03\08005027.DOC}

LEVY RATNER, P.C.

Jennifer L. DeVenuti, Esq.
March 7, 2008
Page 5

5.   <u>Martin v. Curran</u>.

The Proposed Amended Complaint does not attempt to comply with the pleading requirements of the *Martin v. Curran* case.

6.   <u>The Preclusive Effect of Prior Litigations</u>.

As you know, on or about December 12, 2005, Plaintiffs Desiree Wilson, Olivia Wilson, Sherre Wilson and Jerome Watson filed an action in this Court against N.Y.P Holdings, Inc. d/b/a the New York Post and the Defendant Union ("the Wilson Action") whose docket number is Civil Case No. 05-10355(LTS). The Wilson Action claimed among other things that the Defendant Union had unlawfully discriminated against them and otherwise breached its duty of fair representation as to them in the maintenance and implementation of the contractual and historical industry-wide seniority system which is the subject of this lawsuit. Defendant Union moved to dismiss the Complaint. While the Defendant Union's motion was pending, the Plaintiffs withdrew with prejudice all their claims against the Defendant Union. The withdrawal was so ordered by the Court on March 13, 2006.

All claims that were or could have been brought in the Wilson action against the Defendant Union as of the date of the March 13, 2006 may not be raised in this litigation by any of the Wilson Plaintiffs.

Yet, the Proposed Second Amended Complaint makes no attempt to distinguish the claims which arose before or after March 13, 2006. Indeed, it is impossible for Jerome Watson to have a claim that is not precluded by the prior litigation.[2] On the face of the complaint there is no plausible basis for inferring any adverse employment action taking place after March 13, 2006 other than that based upon the transfers which are addressed above.

Similarly, Plaintiff Lee's sole claim appears to be based upon the Post's discriminatory hiring of her as a Casual. Yet she withdrew with prejudice precisely those claims in her separate action against the Post.

The Proposed Second Amended Complaint makes no attempt to justify the re-litigation of the Paulino claims in this action.

7.   <u>Compliance with Administrative Prerequisites</u>.

Plaintiff Lee did not file any complaint with the EEOC against the Union. See Lee Complaint. The Plaintiffs in the Wilson action did not file this action within ninety days of their right to sue letter.

---

[2] Jerome Watson was discharged for cause on or about July 7, 2004.

{Worldox Files\876\001\03\08005027.DOC}

LEVY RATNER, P.C.

Jennifer L. DeVenuti, Esq.
March 7, 2008
Page 6

     This letter is intended only to illustrate why the Proposed Second Amended Complaint is not materially different from the initial complaint in terms of the legal deficiencies. I will make myself available to discuss the complaint more completely if you would find it helpful.

     I would ask that you consider further amendments to address these and the other issues that have been brought to your firm's attention.

     Finally, I also want to remind you that in a prior call from someone in your firm handling this matter, I was told that Robert Abreu and Angel Hernandez were withdrawing their claims. I do not know if you have confirmed with them directly whether that is the case.

                              Very truly yours,

                              Daniel Engelstein

DE:lbg

{Worldox Files\876\001\03\08005027.DOC}