# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
DANIEL PAULINO

                Plaintiff,

-against-

THE NEW YORK PRINTING PRESSMEN'S
UNION, LOCAL TWO AND THE BOARD OF
TRUSTEES AND ROBERT COSTELLO,
ADMINISTRATOR, OF THE PRESSMEN'S
PUBLISHERS' BENEFITS FUND

                Defendant.
---------------------------------------------------------------X

**VERIFIED COMPLAINT**

**INDEX NO.: CV-00053-06 (GBD) (MHD)**

Plaintiff, **DANIEL PAULINO**, by and through his attorneys, **FRANK & ASSOCIATES, PC**, complains as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover monetary and affirmative relief based upon Defendant, New York Printing Pressmen's Union, Local 2's violations of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), §2000e *et seq.*, 42 U.S.C. §1981 and the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA) 29 U.S.C. §411 *et seq.*, and other appropriate rules, regulations, statutes and ordinances.

2. Plaintiff brings this action to recover monetary and affirmative relief based upon Defendant, Pressmen's Publishers' Benefits Fund for violations of the Employee Retirement Income Security Act, ("ERISA"), 29 USC 1001 *et seq.*

1

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to and 28 U.S.C. § 1331 and 1332.

4. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 2000e, *et seq.*

5. This Court has power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §1391 because the unlawful discriminatory conduct occurred within the State of New York, New York County.

7. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (hereinafter EEOC"). Plaintiff originally brought the action within ninety (90) days of the receipt of a Notice of Right to Sue, issued by the EEOC on February 15, 2005, a true and accurate copy of which is attached hereto. See Exhibit A.

8. An amended complaint was filed on July 6, 2005.

9. Plaintiff's action was dismissed without prejudice on December 14, 2005 with the right to refile a new complaint by January 4, 2006.

## III. PARTIES

10. Plaintiff, **DANIEL PAULINO** ("Mr. Paulino" or "Plaintiff") was at all times relevant herein, a citizen of the State of New York residing in New York County.

11. At all times relevant herein, Plaintiff is and had been an "employee" within the meaning of 42 U.S.C. § 2000e(f).

2

12. Upon information and belief, Defendant, **NEW YORK NEWSPAPER PRINTING PRESSMEN'S UNION NUMBER TWO** ("Local 2" or "Union") is an unincorporated association doing business at 275 Seventh Avenue, Suite 1500, New York, New York 10001.

13. Upon information and belief, Local 2 is a collective bargaining representative for, among other newspapers, certain New York Post employees.

14. Upon information and belief, Defendant, **PRESSMEN'S PUBLISHERS' BENEFITS FUND** ("Welfare Fund" or "the Fund"), is a "plan sponsor" within the meaning of 29 USC §1002(16)(B)(iii)

15. At all times relevant herein, Plaintiff has been a "participant" and "beneficiary" of the **PRESSMEN'S PUBLISHERS' BENEFIT FUND** ("Welfare Fund" or "the Fund") within the meaning of 29 USC §1002(7) and (8)

16. Upon information and belief, the Welfare Fund sponsors an employee benefit plan, which provides welfare and pension benefits for employees of the New York Post, the New York Times, and the Daily News.

17. Upon information and belief, Welfare Fund does business at 501 Broadway, New York, New York 10036.

### IV. STATEMENT OF FACTS

**A. <u>Discrimination and Retaliation Against Plaintiff by the Union for His Complaints of Discrimination Based on His Race And Ethinicity</u>**

18. Plaintiff is a Hispanic male.

19. On or about July 2000 Plaintiff was hired by The Post as an Apprentice (a.k.a. Junior Pressmen.)

3

20. Throughout Plaintiff's employment with The Post, Plaintiff performed his job duties in a satisfactory manner.

21. On or about September 12, 2001, Plaintiff received a letter from The Post advising him he would be eligible for Journeymen status after working for the company four (4) years, which in Plaintiff's case was July 2004.

22. The decision to promote a Junior to Journeymen status is made exclusively by the Union based on its practices and procedures.

23. The Union organizes formal training programs to provide Apprentices with the skills necessary to become eligible for Journeymen status.

24. Mr. Paulino became a member of Local 2 in or around September 2000.

25. Once an employee becomes a member of Local 2, he or she is eligible for placement on the "Revisions" List.

26. The Revisions List is used to determine advancement to Journeymen status.

27  Placement on this list determines the order of layoffs and preference to work additional shifts at other newspapers and selection of vacation and sick or personal days off..

28. By these and other acts of the Defendant, Plaintiff suffered adverse employment actions.

29. The order of placement on the Revisions List is determined by the number of shifts a union member works during certain periods of time. Union members may be credited for shifts worked in the year prior to becoming a member of the union.

30. On or about February 2004, Mr. Paulino was able to review two Revision Lists; one dated April 2003 and the other dated February 2004.

4

31. Plaintiff and other similarly situated Minority Hispanic and African-American employees were incorrectly placed at lower seniority than Junior Caucasian employees.

32. Based on the foregoing, Plaintiff believed Defendant was discriminating against him and the other minority employees on the basis of his race and national origin in violation of Title VII.

33. In or about February 2004, Mr. Paulino thereupon complained to Dan MacPhee ("MacPhee"), a union official, that Caucasians were improperly placed ahead of him on the Revision List.

34. MacPhee reviewed Mr. Paulino's records and agreed Mr. Paulino was improperly placed lower on the Revision Lists than Caucasians.

35. Nevertheless, MacPhee advised Mr. Paulino the Union would not change the list.

36. Mr. Paulino then complained to William Loftus ("Loftus") President of Local 2, regarding the Union's discriminatory practice of placing Caucasians with less seniority above more senior Hispanic and African-American employees on the Revisions List.

37. Loftus refused to take any action to change the list to remedy the discrimination.

38. Plaintiff engaged in protected activity, known to the Union, by complaining of discrimination on the basis of race and ethnicity with respect to the Revision List.

39. In November 2004, without due process, Mr. Paulino was suspended from the Union

40. Mr. Paulino learned of his suspension upon review of the Minutes of the Executive Board Meeting in November.

41. Mr. Paulino was later directed by Union President Loftus to attend a hearing before the Executive Board on December 6, 2004.

42. Mr. Paulino appeared before the Executive Board on December 6, 2004.

5

43. The Executive Board refused to address the issue of Revision List Placement or Mr. Paulino's failure to sign an authorization form to enroll in an IRS § 125 Plan.

44. Upon information and belief, the Union discriminated against Mr. Paulino and denied him due process by refusing to address Plaintiff's complaints and provide him with a full and fair hearing..

45. Mr. Paulino thereupon lost all rights and benefits of union membership and among other items, was excluded from participating in union meetings or activities.

46. Mr. Paulino contacted the Graphic Communications International Union (the International Union of Local 2) regarding Defendant's refusal to address his complaints

47. The International Union contacted the Local 2 to investigate Mr. Paulino's complaint.

48. In response, the Local 2 denied Mr. Paulino had complained about the Union's discriminatory practice with respect to placement on the Revision List.

49. The Local's refusal to address Plaintiff's concerns and enforce his rights constituted an employment action disadvantageous to the Plaintiff.

50. The Union's discrimination against Mr. Paulino because he participated in activity protected by Title VII, is an unlawful practice under Title VII and 42 U.S.C. 1981.

51. The Unions refusal to allow Mr. Paulino a full and fair hearing is a violation of the terms of The Local 2 constitution and bylaws, and unlawful under LMRDA.

**B. Failure to Afford Plaintiff Due Process and Unlawful Withdrawal of Plaintiff's Health Benefits.**

52. On or about October 2004, the Post and the Union instituted a "Cafeteria Plan" under Section 125 of the Internal Revenue Code. The plan allowed union members to

6

authorize the withholding of pre-tax dollars from members' paychecks as their contribution toward the funding of a Multi-Employer Health Plan.

53. Under the IRS Section 125 regulations, enrollment in such a plan is voluntary.

54. Mr. Paulino elected not to enroll in the plan.

55. The Union suspended Mr. Paulino's Union membership based upon his election not to enroll in the cafeteria plan.

56. The Union suspended Mr. Paulino without affording him a full and fair hearing as required by the LMRDA.

57. The Union suspended Mr. Paulino without affording him a full and fair hearing as required by the Union Constitution and bylaws before it suspended him.

58. Eric Esposito, Vice President of the Union, noted he was suspended because he failed to enroll in the Cafeteria Plan.

59. At no time did the Union or the Welfare Fund afford Mr. Paulino the option to continue his health coverage through salary deductions in post-tax dollars.

60. Mr. Paulino's wife became pregnant on or around October 2004.

61. After his suspension, Mr. Paulino applied for medical benefits for his wife, Rosa Paulino ("Mrs. Paulino")

62. In January 2005, Empire / Bluecross Blue shield informed Plaintiff directly that his medical insurance had been cancelled as of January 1, 2005, and neither he nor his wife were covered by the health plan.

63. Neither the Union nor the Welfare Fund had advised Mr. Paulino his medical insurance was cancelled.

64. The Welfare Fund violated Mr. Paulinos rights by causing his health insurance to be cancelled without reason except to discipline Paulino for his refusal to enroll in the IRS § 125 Pre-Tax Plan..

65. In January 2005, Mr. Paulino attempted to meet with the Executive Board to discuss the cancellation of his medical insurance and his placement on the Revision List.

66. Mr. Paulino's participation at the meeting was refused.

67. The cancellation of Mr. Paulino's Health Insurance was done to retaliate against him for his refusal to enroll in the § 125 Pre-Tax Plan.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM OF RELIEF
(New York Printing Pressmen's Union – Title VII – Racial Discrimination & Retaliation)

68. Plaintiff repeats and realleges each and every allegation contained herein.

69. Defendant Union's intentional discrimination, harassment and retaliation against Plaintiff on the basis of his race and national origin, and for complaining of such discrimination, constitute violations of Title VII.

70. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer substantial loss of the benefits of employment to which Plaintiff would otherwise be entitled, and emotional distress for which Defendant is liable.

71. The conduct of Defendant was done in willful disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## SECOND CLAIM OF RELIEF
### (New York Printing Pressmen's Union – 42 USC Section 1981)

72. Plaintiff repeats and realleges each and every allegation contained herein.

73. Defendant Union's intentional discrimination, harassment and retaliation against Plaintiff on the basis of his race and national origin, and for complaining of discrimination, as described above, constitute a violation of 42 USC Section 1981.

74. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer substantial loss of the benefits of Union Membership and employment to which Plaintiff would otherwise be entitled, and emotional distress for which Defendant is liable.

75. The conduct of Defendant was done in willful disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, an award of punitive damages, expenses and attorney's fees from defendant in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### (New York Printing Pressmen's Union)
### (Labor Relations Management & Disclosure Act)

76. Plaintiff repeats and realleges each and every allegation contained herein.

77. Defendant Union violated the LMRDA by failing to provide Mr. Paulino with a full and fair hearing before suspending his membership in the Union.

78. Defendant Union violated the Union Constitution and bylaws by failing to provide Mr. Paulino with a full and fair hearing before suspending his membership in the Union.

79. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer substantial loss of the benefits of union membership to which Plaintiff would

9

otherwise be entitled for which Defendant is liable.

80. The conduct of Defendant was done in willful disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to equitable and injunctive relief, expenses and attorney's fees from Defendant in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Welfare Fund – Failure and/or Refusal to Furnish Information)

81. Plaintiff repeats and realleges each and every allegation contained herein.

82. Defendant Welfare Fund failed and/or refused to comply with Plaintiff's requests for information regarding his entitlement to benefits under the plan.

83. Pursuant to 29 U.S.C. Section 1132c(1), Defendant is liable to Plaintiff and his beneficiaries in the amount of $100.00 per day from the date of such failure and/or refusal to furnish information.

## FIFTH CLAIM FOR RELIEF
### (Welfare Fund – Cancellation of Health Benefits)

84. Plaintiff repeats and realleges each and every allegation contained herein.

85. Plaintiff was entitled to receive all benefits afforded under the Local 2 Welfare Plan.

86. In or around January 2005, without justification Defendant cancelled and/or suspended Plaintiff's health insurance coverage and other benefits to which Plaintiff was entitled to under the Local 2 Welfare Plan.

87. By their acts the Trustees and Administrator of the Welfare Plan violated their fiduciary Responsibilities under ERISA.

88. Plaintiff is entitled to recover benefits due to him under the terms of the plan, an Order enforcing Plaintiff's rights under the terms of the plan, and an Order finding a violation of

89. Plaintiff is entitled to an Order enjoining Defendant's unlawful acts and is entitled to obtain appropriate equitable relief pursuant to 29 USC Section 1132a(3).

## VII. DEMAND FOR JURY TRIAL

90. Plaintiff repeats and realleges each and every allegation contained herein.

91. Plaintiff hereby demands a trial by jury Title VII and 42 USC Section 1981 claims.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment:

    a.. An Order declaring Defendants violated the aforementioned statutes;

    b. On the First and Second Claims for Relief, an award of punitive damages, attorney's fees, and expenses.

    c. On the Third Claim for Relief, an Order enjoining Defendant's unlawful acts and appropriate equitable relief.

    d. On the Fourth Claim for Relief, an award of $100.00 per day for each day Plaintiff's benefits have been suspended.

    e. On the Fifth Claim for Relief, an Order enjoining Defendant's unlawful acts and appropriate equitable relief.

Dated: Farmingdale, New York
       January 4, 2005

                                  FRANK & ASSOCIATES, PC
                                  Attorneys for Plaintiff

                           By: _____
                                Neil M. Frank (NF 0521)
                                500 Bi-County Blvd., Suite 112N
                                Farmingdale, New York 11735
                                (631) 756-0400